United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 8, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-60624
_____

JOHN FALEK,

Petitioner,

versus

ALBERTO R. GONZALES, U. S. ATTORNEY GENERAL,

Respondent.
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Before JOLLY, BARKSDALE, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this petition for review, John Falek, who was denied admissibility upon reentry into this country, appeals the decision of the Board of Immigration Appeals ("BIA"), which vacated the Immigration Judge's ("IJ") grant of a § 212(c) waiver of inadmissability and ordered him deported. Because the decision to grant or not to grant waiver of admissibility is discretionary with the BIA, the merits of that decision are nonappealable. Bravo v. Ashcroft, 341 F.3d 590, 593 (5th Cir. 2003). Falek contends, however, that in deciding his case, the BIA violated his due process rights because (1) the BIA, not the Immigration Judge, entered an order of removal in the first instance, (2) the BIA failed to follow its own precedent, and (3) the BIA applied the law

in an impermissibly retroactive fashion.  Because we determine that the first challenge is foreclosed by our precedent and that we lack jurisdiction to consider the second and third challenges, we deny in part and dismiss in part the petition for review.

I

Falek arrived in the United States in 1973 at the age of fifteen, and has since lived in this country continuously as a lawful permanent resident.  His mother and three siblings are United States citizens, all living in the United States.  His father lives in the Philippines, but Falek has not spoken to him since 1969.  Falek served for three years in the United States Navy, and was honorably discharged.  He then worked as a clerk at Bellevue Hospital in New York.

Falek married a woman who had a daughter and they later had a biological daughter together.  In 1989, Falek committed a sexual assault against his stepdaughter, who was about ten years old at the time.  She approached Falek for comfort while her mother was in the hospital, and while sleeping close together, he hugged her and then touched her breasts and pudendum.  In November 1992, Falek entered a guilty plea for the offense of sexual assault in the second degree.  He was sentenced to seven years of imprisonment on May 28, 1993, and served four years of that sentence.  He is a registered sex offender who must report once a year to New York's Board of Examiners for Sex Offenders ("New York Board").  The New York Board assigned him a risk level of one, meaning that he poses

a low risk of being a repeat offender.  Furthermore, Falek is only allowed supervised visits with his biological daughter, who lives with her mother.

Several years later, Falek worked as an aide for Albert Bildner, an elderly friend whom Falek assisted with daily activities and household tasks.  In 2000, Falek began accompanying Bildner on short trips abroad.  He traveled with Bildner twice, re-entering the United States without difficulty both times.  On September 10, 2000, Falek accompanied Bildner on a nine-day trip to Brazil.  Upon Falek's return to the United States at JFK Airport on September 19, 2000, he was arrested by the Immigration and Naturalization Service as an alien seeking admission into the United States under 8 U.S.C. § 1101(a)(13), and he was issued a Notice to Appear, which charged him with inadmissibility as an alien who has been convicted of a crime involving moral turpitude, under § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA").

II

Falek's case has been before the IJ and the BIA twice, before the federal courts in New York and before us once before.  The appeal we consider today arises from his second habeas petition, which was transferred to this court from the Southern District of New York.  In January 2001 the first immigration hearing was held. The IJ later issued a written decision finding Falek removable and ordering him removed because his crime involved moral turpitude.

The IJ further found that Falek's offense was an aggravated felony under the INA, which meant that Falek was both statutorily ineligible for cancellation of removal and ineligible for a § 212(c) waiver of inadmissibility under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Falek's argument that the IJ should follow Second Circuit retroactivity precedent that would make him eligible for § 212(c) relief was rejected because the IJ found no analogous precedent of this court. In June, the Supreme Court rendered its decision in INS v. St. Cyr, 533 U.S. 289 (2001), holding that it was an impermissibly retroactive application of IIRIRA to bar § 212(c) relief for aliens who, in reliance on the availability of that relief, had pleaded guilty to aggravated felonies. In July, Falek appealed the IJ's decision to the BIA based on St. Cyr, asking for a hearing on a § 212(c) waiver of inadmissibility. He did not, however, raise the question of retroactive application of § 1101(a)(13)(C), that is, whether the statute was impermissibly retroactive as to him, and thus whether, under the statute, he should have been considered "seeking admission" to the country when he returned from a brief trip abroad. The BIA affirmed in part and vacated in part, agreeing with the IJ that Falek's guilty plea subjected him to the amended statute but remanding to the IJ to allow Falek to apply for § 212(c) relief, as per St. Cyr.

4

On March 29, 2002, the IJ conducted a hearing on the issue of § 212(c) waiver, and ultimately granted the waiver. The IJ considered Falek's conviction to be a serious adverse factor that could only be overcome by a showing of outstanding equities. The IJ considered that most of Falek's family is in the United States, that he has essentially no relatives in the Philippines, that he moved to the United States at the age of fifteen, that he had lived in the United States for about thirty years, and that he had served in the United States Armed Forces. The IJ concluded that Falek would suffer extreme hardship if removed to the Philippines, as he had not lived there since the age of fifteen and had no family there to help him readjust. The IJ next considered the issue of rehabilitation, determining that Falek had demonstrated rehabilitation because of his low risk rating by the New York Board, and because Falek had been out of jail for several years and had not committed any other crimes. Ultimately concluding that "positive equities were sufficiently outstanding to outweigh [Falek's] criminal conviction," the IJ granted Falek's application for a § 212(c) waiver.

The Government appealed the IJ's decision to the BIA. On December 4, 2002, the BIA reversed the decision of the IJ, granted the Government relief and ordered Falek removed. The BIA reasoned that it "agree[d] with the [Government's] contention that the positive factors demonstrated by [Falek], i.e., long term residence in the United States, some military service and extensive family

5

ties in the United States, cannot outweigh the seriousness of the circumstances surrounding his 1993 conviction for sexual assault." The BIA further noted that "when considering the important issue of rehabilitation, we agree with the [Government] that [Falek] has failed to provide any evidence of genuine rehabilitation." Again, the merits of this BIA decision are nonappealable. The posture of his case has required Falek to pursue different avenues of relief in other forums.

On December 26, 2002, Falek filed a petition for habeas corpus in the United States District Court for the Eastern District of New York, alleging for the first time since his initial January 2001 appearance before the IJ that he was not an "alien" under the relevant law. On January 30, 2004, because Falek has always been incarcerated in Oakdale, Louisiana, the petition was transferred to this Court. On December 6, 2004, Falek filed another habeas petition in the United States District Court for the Eastern District of New York, alleging that his due process rights had been violated. On February 15, 2005, this Court dismissed Falek's first petition for lack of jurisdiction and failure to raise a genuine issue of material fact as to whether he is an "alien." On June 27, 2005, the district court transferred the relevant portions of Falek's second habeas petition to this Court, pursuant to the REAL ID Act. See Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c). This second habeas petition, converted to a petition for review under the REAL ID Act, see id., is the subject of this appeal.

6

III

Falek now argues that his due process rights were violated by: (1) the BIA's entry of an order of removal in the first instance, that is, in the absence of such an earlier order by the IJ;[1] (2) the BIA's failure to follow its own precedent by refusing to consider evidence in the record on the relevant factors of rehabilitation and hardship;[2] and (3) the retroactive application of § 1101(a)(13). The Government, however, also raises the question of this court's jurisdiction to consider Falek's third claim of error, to which we now turn.

Falek argues that at the time he agreed to plead guilty, his guilty plea did not impose consequences on his immigration status based on departure from and reentry into this country; however, when Congress changed the law in IIRIRA, his departure and reentry resulted in his detainment and order of removal. Thus the law had

---

[1] Falek's argument on this issue fails, as this Court has recently decided the issue in the Government's favor. See Delgado-Reynua v. Gonzales, 450 F.3d 596, 599-600 (5th Cir. 2006).

[2] In cases such as this one, this Court has appellate jurisdiction, but that jurisdiction is limited to (1) "constitutional claims" or (2) "questions of law" that have been exhausted. 8 U.S.C. §§ 1252(a)(2)(D), 1252(d)(1). Our review of the record makes clear to us that the BIA did in fact consider the factors of rehabilitation and hardship. Falek frames his "legal" argument, that the BIA did not follow its own precedent, "to cloak a request for review of the BIA's discretionary decision, which is not a question of law." See Delgado-Reynua, 450 F.3d at 600; see also Hadwani v. Gonzales, 445 F.3d 798, 800-01 (5th Cir. 2006). Thus, we dismiss Falek's petition for lack of jurisdiction "in so far as it challenges the BIA's denial of section 212(c) discretionary relief from removal." See Delgado-Reynua, 450 F.3d at 600.

7

an impermissibly retroactive effect when applied to him. The Government counters that we lack jurisdiction to entertain this question because a question of law must be first presented and exhausted administratively before the BIA.

The applicable law on exhaustion is statutory and emphatic: "A court may review a final order of removal only if [] the alien has exhausted all administrative remedies as of right." 8 U.S.C. § 1252(d)(1). We have emphasized that: "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA." Wang v. Ashcroft, 260 F.3d 448, 452-53 (5th Cir. 2001). The Government contends that Falek's claims regarding retroactivity are nothing more than legal claims regarding admission procedures, in which case the BIA is empowered to consider them. Arguing that Falek did not raise these claims on his first direct appeal to the BIA in 2001, the Government contends that he has failed to exhaust these claims, and, accordingly, this Court lacks jurisdiction to consider them.

Falek concedes that the specific argument he offers here was not raised below. Instead, he argues that his retroactivity argument need not have been made previously, citing this court's decision in Lopez de Jesus v. INS, 312 F.3d 155 (5th Cir. 2002). Falek contends that there this court considered an impermissible retroactivity argument that was not raised below because it was not a "procedural error correctable by the BIA" and thus was "not

8

subject to an exhaustion requirement."  See 312 F.3d at 162 n.47. Falek also relies on a more recent Ninth Circuit case in which the court held that "[r]etroactivity challenges to immigration laws implicate legitimate due process considerations that need not be exhausted in administrative proceedings because the BIA cannot give relief on such claims."  See Garcia-Ramirez v. Gonzales, 423 F.3d 935, 938 (9th Cir. 2005).

Falek is incorrect.  Although there is language in the Supreme Court's seminal decision in Landgraf v. USI Film Products, 511 U.S. 244 (1994), indicating that retroactive application of the law can implicate legitimate due process concerns, constitutional due process was not the ground relied upon by the court in that case or in St. Cyr.  A careful reading of Landgraf demonstrates that a claim based on St. Cyr -- which is plainly what Falek attempts to bring here -- is an argument of statutory interpretation.  It draws upon a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."  Landgraf, 511 U.S. at 265. Although the Supreme Court found that "the antiretroactivity principle finds expression in several provisions of our Constitution," including the Due Process clause, those "restrictions ... are of limited scope."  Id. at 266, 267. Ultimately, the Court concluded discussion of the Constitution by stating that "while the *constitutional* impediments to retroactive

9

civil legislation are now modest, prospectivity remains the appropriate default rule." Id. at 272 (emphasis in original). It then analyzed the statute at issue under this rule. St. Cyr follows the same analytical path and nowhere mentions the Constitution in its analysis of the impermissibly retroactive effect of IIRIRA on the petitioner's earlier guilty plea.

A concise delineation of the Landgraf/St. Cyr analysis, concerning whether it is statutory or constitutional, appears in an Eleventh Circuit case, Mohammed v. Ashcroft, 261 F.3d 1244 (11th Cir. 2001). As that court put it:

> Technically speaking ... Landgraf does not purport to lay down rules for deciding when retroactive application of a statute would violate Due Process. Rather, the Supreme Court in that case established principles to be used by courts in evaluating whether, as a matter of statutory analysis, an Act of Congress may be applied retroactively. Although the Court did discuss potential Due Process considerations as one reason to adhere to the general presumption against a statute's retroactivity in the absence of clear Congressional intent to the contrary, the Court did not attempt to define precisely when retroactive application of a statute would violate Due Process.

261 F.3d at 1248-49 (citation omitted). This view of Landgraf also comports with the decision of the Fourth Circuit in Olatunji v. Ashcroft, 387 F.3d 383 (4th Cir. 2004), which characterized an alien's claim under Landgraf/St. Cyr as a "statutory retroactivity claim," see id. at 389 n.2. The resolution of the retroactivity claim through statutory analysis meant that the Fourth Circuit

10

panel did not need to address the petitioner's claim under the Fifth Amendment's Due Process clause.  Id.

Lopez de Jesus, the case relied upon by Falek to support our jurisdiction, is inapposite for at least two reasons.  First, the IIRIRA provision at issue there was expressly retroactive.  See Lopez de Jesus, 312 F.3d at 162.  This is important because express retroactivity brings into question the undefined constitutional concerns discussed in dicta in Landgraf.[3]  These issues are not implicated in the prong of the Landgraf/St.Cyr analysis that applies a presumption against retroactive application of laws that are not expressly retroactive, the prong at issue in Falek's challenge.  Second, the petitioner in Lopez de Jesus briefed and argued a Fifth Amendment Due Process challenge in this court.[4]  Id. Falek, by contrast, brings a St. Cyr-type challenge and offers no

---

[3]The first prong of the analysis asks whether "Congress has communicated, with clarity, its intent that the law be applied retroactively."  Hernandez-Castillo v. Moore, 436 F.3d 516, 519 (5th Cir. 2006).  If so, the Supreme Court has intimated that some constitutional limits may apply.  See St. Cyr, 533 U.S. at 316 ("[I]t is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect.").

The second prong, at issue here, arises if there is no clear statement from Congress and, as a matter of statutory interpretation, it asks if "the application of the statute 'attaches new legal consequences to events completed before ... enactment.'" Hernandez-Castillo, 436 F.3d at 519 (quoting Landgraf, 511 U.S. at 270).

[4]This is why the exhaustion requirement did not apply:  there is no dispute that the BIA has no power to adjudicate constitutional claims. See Hernandez-Rivera v. INS, 630 F.2d 1352, 1355 (9th Cir. 1980) (citing Johnson v. Robison, 415 U.S. 361, 368 (1974)).

11

argument based on Fifth Amendment due process.[5]  In sum, <u>Lopez de Jesus</u> provides no support for his argument that his claim raises a constitutional issue that does not require administrative exhaustion.

Falek's reply brief also points to a 2005 Ninth Circuit case, <u>Garcia-Ramirez</u>, for the proposition that challenges to the retroactive application of immigration laws need not be exhausted. This authority suffers from the precise problem as <u>Lopez de Jesus</u>; <u>Garcia-Ramirez</u> also concerned the expressly retroactive (and hence potentially constitutional) prong of the <u>Landgraf</u> analysis.  <u>See</u> <u>Garcia-Ramirez</u>, 423 F.3d at 939-40.  As the Ninth Circuit panel put it, "Garcia-Ramirez's claim is properly viewed as an assertion that application of the 90/180-day rule of § 1229b(d)(2) to her violates due process ...."  <u>Id.</u> at 938.  The 90/180-day rule, as applied to those against whom the IRS had begun deportation proceedings before IIRIRA became effective, is expressly retroactive.  <u>See</u> IIRIRA § 309(c); <u>Ram v. INS</u>, 243 F.3d 510, 515-18 (9th Cir. 2001).  The parties agree that this is not the claim asserted here.

IV

It is clear that a petitioner must exhaust before the BIA all claims that he raises in the federal courts, that is, unless they

---

[5]Falek has neither briefed nor argued a Fifth Amendment Due Process claim in this court, despite his attempt to call the BIA's alleged errors violations of his right to due process.  We therefore consider such an argument waived and express no opinion on whether the constitutional concerns cited in dicta in <u>Landgraf</u> might offer some relief to a petitioner in Falek's situation.

are constitutional.  8 U.S.C. § 1252(a)(2)(D).  As we have said above, Falek made an argument based on impermissible retroactivity before the IJ in his first appearance in January 2001, which the IJ rejected.  After the Supreme Court's <u>St. Cyr</u> decision, however, in his appeal to the BIA, he decided not to appeal the IJ's legal conclusion on that issue; instead his appeal argued only the availability of a § 212(c) waiver hearing for people in his situation, which had been made available by <u>St. Cyr</u>.  Because (1) he then could have argued that IIRIRA was impermissibly retroactive as applied to his attempted reentry into this country and (2) the BIA is fully capable of having adjudicated such a claim, Falek failed to exhaust administrative remedies.  We therefore do not have jurisdiction to hear his non-constitutional retroactivity claim and it is hereby dismissed.

For the foregoing reasons, Falek's petition for review is

DENIED in part and DISMISSED in part.

13