United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 24, 2007**

Charles R. Fulbruge III
Clerk

REVISED May 4, 2007

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60555

_____

MIRIAM GARRIDO-MORATO,

Petitioner,

versus

ALBERTO R. GONZALES, U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Miriam Garrido-Morato ("Garrido") petitions for review of a decision of the Board of Immigration Appeals ("BIA"). The BIA held that she was ineligible for discretionary hardship relief from deportation because in 1996 she was convicted by her plea of guilty for harboring aliens. The primary issues she raises relate to the retroactivity of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amendments that made harboring aliens an aggravated felony. Garrido contends that these amendments are impermissibly retroactive as applied to her and that she is entitled to the benefits of the law as it existed when she entered her plea of guilty, that is, notwithstanding her conviction, she is

eligible for discretionary relief.  We conclude otherwise and deny the petition for review.

                                    I

Garrido entered this country in 1986 from her native Mexico, traveling as a minor with her mother.  She was admitted as a non-immigrant visitor with permission to remain for 72 hours, but has remained in the United States without apparent interruption.  In the expanse of time, Garrido married, had three children and is now divorced.

On March 13, 1996, the authorities decided it was time for her to go home.  The former Immigration and Nationalization Service ("INS") filed an order to show cause charging that Garrido had stayed longer than she was authorized.

On June 11, Garrido pled guilty in federal court in the Southern District of Texas to one count of harboring aliens.

On July 2, an Immigration Judge ("IJ") held a hearing concerning Garrido's case, at which Garrido conceded deportability. She was not immediately ordered deported, however, and instead was granted the opportunity to apply for suspension of deportation.

On August 23, a judgment in her criminal case for harboring aliens was entered and Garrido was sentenced to three years of probation.

On September 10, she applied for suspension of deportation under § 244 of the Immigration and Nationality Act, formerly codified at 8 U.S.C. § 1254(a)(2) (1994), contending that her

                                    2

deportation would result in an undue hardship because her family is settled in the United States. Under § 244 the Attorney General had discretion to adjust the status of a deportable alien who

> has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(2) (1994).

On September 30, Congress passed IIRIRA, making two relevant changes affecting Garrido's situation. First, the new law repealed § 1254(a) and replaced it with § 1229b, which added a new requirement for discretionary relief -- that the alien seeking such relief have no conviction for an aggravated felony. Second, Congress modified the definition of "aggravated felony" and, for the first time, specifically included the crime of harboring aliens within that definition.

In March 1997, the IJ held hearings to consider Garrido's request for relief. On March 27, the IJ, rejecting her arguments that the new IIRIRA amendments were not applicable to her situation, found that she was ineligible for relief. It was not until February 2002 that the BIA rejected Garrido's appeal. She

3

did not appeal. Instead, Garrido later became a plaintiff in a class action in the district court for the Southern District of Texas, seeking habeas relief. Upon the passage of the REAL ID Act, see Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c), the habeas petition was transferred to this court and converted into this petition for review.

## II

### A

Garrido argues that the determination that she is ineligible for relief arises from an impermissibly retroactive application of the amended definition of "aggravated felony" in IIRIRA § 321.[1]

---

[1] Garrido also argues that a conviction for harboring aliens should not bar her from discretionary relief because it does not "relate to alien smuggling" and thus does not fit the definition of "aggravated felony" at issue here. This contention is foreclosed by our decision in United States v. Monjaras-Castaneda, 190 F.3d 326, 329-31 (5th Cir. 1999), in which we held that the parenthetical "related to alien smuggling" in 8 U.S.C. § 1101(a)(43)(N) is descriptive and not limiting.

Garrido's argument that the effective elimination of hardship relief violates international law also fails, as we recently rejected this precise argument. See Martinez-Lopez v. Gonzales, 454 F.3d 500, 502-03 (5th Cir. 2006).

Finally, Garrido contends that her constitutional rights have been violated by the retroactive application of IIRIRA to her. Her due process rights are not at issue here because we have consistently held that discretionary relief from removal is not a liberty or property interest afforded such protection. See Assaad v. Ashcroft, 378 F.3d 471, 475 (5th Cir. 2004). We reject her equal protection argument because, under rational basis scrutiny, Congress could have rationally decided to make discretionary relief unavailable with immediate effect. Garrido's ex post facto clause argument fails because its protections do not extend to "acts of Congress governing deportation." Marcello v. Ahrens, 212 F.2d 830, 838-39 (5th Cir. 1954). We deem Garrido's Takings Clause argument

4

Relying on INS v. St. Cyr, 533 U.S. 289 (2001), she argues that applying the amended definition of aggravated felony attaches new consequences to the bargain that she had made with the government, i.e., her plea of guilty; that is, after she agreed to plead guilty and was convicted on her plea, the government changed the definition to make her crime an aggravated felony so as to render her ineligible for relief that earlier had been available to her.

Specifically, the new definition of aggravated felony codified at 8 U.S.C. § 1101(a)(43)(N), includes "an offense described in [8 U.S.C. § 1324(a)(1)(A) or (2)] ... (relating to alien smuggling) except" in cases that the parties agree do not apply here. See P.L. 104-132, § 440(e)(3); P.L. 104-208, § 321(a) at 110 Stat. 3009-627.[2] To say it clearly, this new definition of aggravated felony includes Garrido's crime of conviction, harboring aliens. Whether the statute has retroactive application is an argument based on statutory interpretation, see Falek v. Gonzales, 475 F.3d 285, 290-91 (5th Cir. 2007), and thus a pure question of law. We review the BIA's conclusions of law de novo. Hernandez-Castillo v. Moore, 436 F.3d 516, 519 (5th Cir. 2006).

---

abandoned as it does not extend beyond the conclusory assertion that there was a taking of the filing fee she paid with her application for suspension of deportation. See Dardar v. Lafourche Realty Co., 985 F.2d 824, 831 (5th Cir. 1993).

[2] The definition was amended by both the Anti-Terrorism and Effective Death Penalty Act, P.L. 104-132, and IIRIRA.

Determining whether a statute is impermissibly retroactive requires an analysis of one, or two, steps:

> First, a statute must be given retroactive effect if Congress has communicated, with clarity, its intent that the law be applied retroactively [citation omitted].  Second, where a clear statement from Congress is lacking, there is an impermissible retroactive effect where the application of the statute 'attaches new legal consequences to events completed before the statute's enactment.'

Id. (quoting Landgraf v. USI Film Products, 511 U.S. 244, 270 (1994)).  The dispositive question before us is whether Congress has expressed its clear intent that the IIRIRA definition of aggravated felony apply to the petitioner's crime of conviction.

The standard for finding a statute expressly retroactive is demanding.  St. Cyr, 533 U.S. at 316.  The Supreme Court has suggested that retroactivity has only been found in "statutory language that was so clear that it could sustain only one interpretation."  Id. (quoting Lindh v. Murphy, 521 U.S. 320, 328 n.4 (1997)).

B

Whether the statute at issue expresses a clear intent that the new definition of aggravated felony apply to all previous convictions for harboring aliens requires a careful examination of IIRIRA § 321(b) and (c).  The statute provides:

> (b) EFFECTIVE DATE OF DEFINITION.--Section 101(a)(43) (8 U.S.C. 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), the

6

term [i.e., aggravated felony] applies [to, _inter alia_, crimes relating to alien smuggling] regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.".

(c) EFFECTIVE DATE.--The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred ....

P.L. 104-208, 110 Stat. 3009-628.

It is unmistakable but that § 321(b) clearly expresses Congress's intent to apply the new definition of "aggravated felony" to all covered felonies, no matter when the convictions occurred.

Because she must concede that the terms of § 321(b) express an intent of retroactivity as to the definition of aggravated felony under the statute,[3] Garrido relies on § 321(c) to argue that it is unclear whether the statute itself applies to her claim for relief. The most favorable argument to be made is that § 321(c) is the effective date provision for the entire section:  § 321(c) states to what and when the statute itself (not merely its definitions) is to be applied; the statute is to be applied to (1) "actions" that are "taken" (2) on and after the date of enactment.  Thus, she asks, to what "actions" is the statute referring.  On that point, she contends, the words of the statute are ambiguous, and thus

---

[3] Indeed, this provision was cited by the Supreme Court in St. Cyr as an example of a statute that was clearly retroactive.  See 533 U.S. at 319.

7

undermine any argument that Congress has made a clear statement of retroactivity.

"Actions taken," she argues, is not defined anywhere in IIRIRA and it is thus unclear what actions are contemplated by the statute, and who must take them. She proposes that "actions taken" arguably are actions that relate to, or are done by, her, including her guilty plea, the commencement of deportation proceedings against her, and her application for hardship relief -- all occurring before September 30, 1996, the date of IIRIRA's effectiveness. Thus, the uncertainty of the meaning of "actions taken" indicates that there is no clear statement of retroactive intent that IIRIRA applies to her undue hardship claim.

The government's position is that § 321(b) expresses a clear retroactive intent and that § 321(c) further expresses the intent that the statute encompasses all convictions for harboring aliens irrespective of when they occurred. The government argues that the language "actions taken" refers to actions by the representatives of the Attorney General (such as an IJ or the BIA) to effectuate and adjudicate deportation orders against a particular alien. Thus, since the IJ "took action" by ruling on Garrido's undue hardship claim in March 1997, nearly six months after IIRIRA's effective date, § 321(c) required him to apply the new, retroactive definition of aggravated felony, "regardless of when the conviction occurred."

8

Garrido replies that "actions taken" is necessarily a broader category than the government argues, because elsewhere in IIRIRA the phrase "decision or action of the Attorney General" encompasses exactly the government's proposed definition of "actions taken." Had Congress meant the same thing it would have used the same phrase. Therefore, "actions taken" might also include her action of pleading guilty and applying for relief.

The meaning of the phrase "actions taken" is a question of first impression in this circuit. Five of six other circuit courts to consider this meaning in a variety of contexts agree with the government that "actions taken" are decisions of the Attorney General's representatives with regard to a particular alien.[4] No circuit court has accepted Garrido's position that her decision to plead guilty constitutes an "action taken" that would affect the statute's retroactivity. See cases cited in note 4.

Although "actions taken" may be more inclusive, we fully agree that the term includes "actions and decisions of the Attorney General acting through an immigration judge or the BIA." Xiong, 173 F.3d at 607. But it is also clear to us that "actions taken" are actions taken under the statute. Indeed, "actions taken" must

---

[4] See Choeum v. INS, 129 F.3d 29, 37 (1st Cir. 1997); Ortiz v. INS, 179 F.3d 1148, 1155 (9th Cir. 1999); Xiong v. INS, 173 F.3d 601, 607 (7th Cir. 1999); Kuhali v. Reno, 266 F.3d 93, 110-11 (2d Cir. 2001); Tran v. Gonzales, 447 F.3d 937, 941 (6th Cir. 2006). But see Mendez-Morales v. INS, 119 F.3d 738, 739 (8th Cir. 1997) (holding, without full explanation, that that court's consideration of the matter was also an "action taken" that required the use of the amended definition).

9

refer only to such actions taken under the statute because § 321(c) is an effective date provision for § 321 and it thus only speaks to "actions" that are "taken" under that section, such as determining the meaning of "aggravated felony" and thus the availability of discretionary hardship relief to such felons. It does not speak to "actions" that are not taken pursuant to the statute.

Applying this unmistakable language to Garrido's situation, there is no doubt that the IJ's March 27, 1997 ruling denying her hardship relief was an "action taken" that caused the expressly retroactive definition of aggravated felony to apply.[5] In other words, because that ruling, i.e., "action taken," occurred after September 30, 1996, § 321(c) compelled the IJ to utilize the retroactive definition and find Garrido's conviction to be an aggravated felony.

In sum, there is no ambiguity in § 321(c) that would cast doubt on Congress's intent that the definition of aggravated felony is to be applied retroactively with respect to any action taken that implicates § 321. Because both subsections (b) and (c) make clear in express words that the new definition of aggravated felony applies to all convictions without regard to the date of occurrence, IIRIRA § 321 meets the high bar, delineated in St. Cyr, for a statute to be found to express Congress's intent that it be

---

[5] We note that Garrido did not present any argument to this court that, because of the timing of her proceedings before the IJ, she should have instead been subject to IIRIRA's "transitional rules." See IIRIRA § 309(c)(1), (4), 110 Stat. 3009-625, 626.

applied retroactively.  We therefore reject Garrido's claim that the application of the statute to her crime and conviction is impermissibly retroactive.

III

Garrido's petition for review and motion for stay of removal are hereby

D E N I E D.