RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0331p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

AMWAR I. SAQR,

                *Petitioner,*

    *v.*

No. 07-3794

ERIC H. HOLDER, JR., Attorney General,[*]

                *Respondent.*

On Petition for Review from a Final Order
of the Board of Immigration Appeals.
No. A72 221 034.

Argued: December 5, 2008

Decided and Filed: September 9, 2009

Before: CLAY and GIBBONS, Circuit Judges; STAMP, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Blake P. Somers, Cincinnati, Ohio, for Petitioner. Blair O'Connor, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent **ON BRIEF:** Blake P. Somers, Cincinnati, Ohio, for Petitioner. Blair O'Connor, Michelle Gorden Latour, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

FREDERICK P. STAMP, JR., District Judge. Anwar I. Saqr ("Saqr") seeks review of the decision by the Board of Immigration Appeals ("BIA") upholding the

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

[**] The Honorable Frederick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.

Immigration Court's finding that Saqr is subject to removal on the grounds that his criminal conviction for second degree assault under extreme emotional disturbance under Kentucky law is an aggravated felony and that his conviction for reckless homicide is a crime of moral turpitude. This Court has jurisdiction pursuant to 8 U.S.C. § 1252(a). For the reasons that follow, the BIA's finding that Saqr is removable on the basis of his conviction for second degree assault under extreme emotional disturbance is reversed, and this action is remanded for further proceedings to determine whether Saqr's conviction for reckless homicide constitutes a crime of moral turpitude.

## I. *BACKGROUND*

While in the United States in valid non-immigrant status, Saqr was involved in a motor vehicle accident in which one person was killed and another person seriously injured. Pursuant to a plea agreement with state authorities, Saqr pled guilty to one count of reckless homicide in violation of Kentucky Revised Statute § 507.050 and one count of assault in the second degree under extreme emotional disturbance in violation of Kentucky Revised Statutes §§ 508.020 and 508.040. On January 7, 1994, Saqr was sentenced to a four-year period of imprisonment on each count, to be served consecutively.

On February 11, 1994, the Immigration and Naturalization Service[1] served Saqr with an Order to Show Cause ("OSC"), ordered him to appear for a hearing before an immigration judge at a time and place to be determined, and issued a warrant for his arrest. The OSC charged Saqr with having committed a crime involving moral turpitude and violating the terms of his non-immigrant status, thereby rendering him subject to removal pursuant to Sections 241(a)(2)(A)(i) and 241(a)(1)(C)(i), respectively, of the Immigration and Nationality Act. The OSC did not include a charge that Saqr had committed an aggravated felony.

---

[1]Pursuant to the Homeland Security Act of 2002, the functions of the former Immigration and Naturalization Service were transferred from the Department of Justice to the Department of Homeland Security on March 1, 2003.

The INS did not file the OSC with an Immigration Court.  However, the INS also does not appear to have canceled the February 11, 1994 OSC at any time, and the arrest warrant appears to have remained in effect, as well.  In early July 1998, Saqr was released into INS custody.  On August 18, 1998, while Saqr remained in INS custody, the INS served him with a second OSC, now called a Notice to Appear ("NTA").  The NTA, like the OSC served on Saqr in 1994, charged only that he was subject to removal based upon his conviction for a crime involving moral turpitude and, separately, based upon his having failed to maintain or comply with the conditions of his non-immigrant status; it did not include a charge that he was subject to removal based upon an aggravated felony conviction.  On September 9, 1998,  the INS lodged the additional charge that Saqr was subject to removal for an aggravated felony conviction and, on the same date, filed the NTA with the Immigration Court.

During the interim between February 11, 1994, when the OSC was served upon Saqr, and September 9, 1998, when the NTA was filed with the Immigration Court, Congress adopted a new definition of the term "aggravated felony."  *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), § 321, 110 Stat. 3009-627.  Under the previous definition, an offense constituted an aggravated felony if it was "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years. . . ."  8 U.S.C. § 1101(a)(43)(F) (1994).  Under the new definition, an offense qualifies as an aggravated felony if it is "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(F) (1996).

At an individual hearing on the merits, held before the Immigration Court on March 1, 2000, Saqr argued that his crimes of conviction were not crimes involving moral turpitude.  Saqr also argued that neither offense was an aggravated felony under the law as it existed at the time of his plea and conviction and that applying the expanded

definition of "aggravated felony" adopted by Congress in 1996 to his case would be an impermissibly retroactive application of the law.

In an oral decision and order dated March 1, 2000, the Immigration Court rejected the Government's contention that Saqr had failed to maintain his non-immigrant status or had violated the terms of that status by virtue of his criminal convictions. However, the Immigration Court found that the conviction for reckless homicide constitutes a crime of moral turpitude. The Immigration Court made no finding on whether the assault offense also constitutes a crime of moral turpitude. Furthermore, although the Immigration Court did not specifically address the issue of retroactivity, the Immigration Judge applied the post-IIRIRA definition of aggravated felony to Saqr's convictions and found that both qualify as aggravated felonies. On the basis of these findings, the Immigration Court found Saqr removable. Additionally, the Immigration Judge concluded that the reckless homicide offense constitutes not only an aggravated felony, thereby rendering Saqr ineligible for asylum, but also a "particularly serious offense," thereby rendering Saqr ineligible for withholding of removal. Finally, the Immigration Court found that Saqr had abandoned his application for relief from removal under the Convention Against Torture ("CAT").

Saqr appealed to the BIA, which affirmed in part and reversed in part. In an order dated April 7, 2003, the BIA upheld the Immigration Court's finding that Saqr was removable for having committed an aggravated felony. The BIA did not specify whether only one conviction or both qualify as an aggravated felony, but presumably it intended to encompass both convictions because the Immigration Court had determined both to be aggravated felonies. Similarly, although the BIA found that the Immigration Court properly determined that Saqr had committed a particularly serious crime, thereby rendering him ineligible for withholding of removal, the Immigration Court did not discuss whether it deemed both offenses or only the reckless homicide offense to be particularly serious. Because the BIA did not specify otherwise, it presumably intended this finding to apply only to the reckless homicide conviction given that the Immigration Judge made no finding concerning whether the assault offense is a particularly serious

crime. Finally, the BIA found the record insufficient on the issue of Saqr's request for relief under the CAT and remanded for further proceedings on that issue.

The BIA order left a number of issues unaddressed entirely. First, although the Immigration Court had found the reckless homicide conviction to be a crime of moral turpitude, the BIA made no determination on that issue. Second, the BIA, like the Immigration Court, failed to address whether the assault conviction constitutes a crime of moral turpitude. Third, the BIA did not address the Immigration Court's determination that Saqr was not removable on the basis of a violation of his non-immigrant status. However, the BIA did address the retroactivity issue, stating that it lacked authority to rule on the constitutionality of laws enacted by Congress.

On remand from the BIA, the Immigration Court denied Saqr's claim for relief under the CAT. In light of that denial, the Immigration Court reinstated its March 1, 2000 order of removal.

Saqr appealed to the BIA, essentially requesting reconsideration of the finding that the reckless homicide conviction qualifies as an aggravated felony in light of the United States Supreme Court's intervening decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004).[2] The BIA concluded that the reckless homicide offense is an aggravated felony because the mens rea element of the crime was greater than negligence. Accordingly, the BIA upheld the Immigration Court's earlier order finding Saqr removable on the basis of the reckless homicide conviction, which the BIA concluded was an aggravated felony. The BIA also stated that the aggravated felony conviction rendered Saqr ineligible for asylum or withholding of removal.

Saqr petitioned this Court for review. After Saqr had filed his opening brief, the Government moved to remand on the issue of whether the definition of "recklessly" as set forth in Kentucky Revised Statutes § 501.020(4) shares the same meaning as the common law definition of criminal negligence, and if so, whether Saqr's case was

---

[2]*Leocal* held that a crime which has as an element a mens rea of negligence or which has no mens rea element is not a crime of violence under 18 U.S.C. § 16 and therefore does not constitute an aggravated felony. *Leocal v. Ashcroft*, 543 U.S. 1, 13 (2004).

controlled by *Leocal*. This Court, noting that Saqr did not oppose the motion so long as the remand was limited to that issue, granted the motion. This Court's remand order limited the scope of the remand to the above-described issue.

While Saqr's case was pending before the BIA on remand, this Court decided *United States v. Portela*, 469 F.3d 496 (6th Cir. 2006). In *Portela*, this Court determined that "a crime requiring only recklessness does not qualify as a 'crime of violence' under 18 U.S.C. § 16." *Id.* at 499. The Government conceded that *Portela* disposed of the issue on remand in Saqr's favor. However, the Government also briefed what it entitled "Additional Issues to be Considered." Specifically, the Government reminded the BIA that Saqr had also been convicted of second degree assault under extreme emotional disturbance, which the Immigration Court had determined to be an aggravated felony--a determination previously upheld by the BIA. The Government also reminded the BIA that the Immigration Court had found the reckless homicide offense to be a particularly serious crime. The Government argued that because of the aggravated felony conviction for assault, Saqr was removable and ineligible for asylum and that because of the finding that reckless homicide was a particularly serious crime, he was ineligible for withholding of removal. In a footnote, the Government pointed out that the Immigration Court found reckless homicide to be a crime of moral turpitude and argued that the assault offense should also be found to be a crime of moral turpitude. Also in a footnote, the Government argued that the assault conviction should be deemed a particularly serious crime and observed that the Immigration Court had failed to address that issue.

The BIA issued a decision on May 21, 2007, addressing not only the remanded issue specified by this Court, but also some of the "loose end" issues identified by the Government. The BIA recognized that in light of *Portela*, the reckless homicide conviction is not an aggravated felony. However, the BIA found that the Immigration Court correctly determined that the assault conviction is an aggravated felony because intent is an element of the offense, thereby making the offense a crime of violence, and because the term of imprisonment for the offense is at least one year. Accordingly, the BIA held that Saqr is removable and ineligible for asylum based upon his assault

conviction.  The BIA further determined that the Immigration Court was correct in concluding that the reckless homicide offense is a particularly serious offense, thereby making Saqr ineligible for withholding of removal.  The BIA did not reach the issue of whether one or both of Saqr's offenses may be a crime involving moral turpitude, nor did it address whether the assault offense is a particularly serious crime.

On appeal, Saqr first argues that these proceedings must be terminated because the BIA violated this Court's remand order by addressing issues that were not within the scope of that order.  Saqr also argues that the BIA erred by finding him removable because it impermissibly retroactively applied the new definition of aggravated felony to his convictions; because even if the BIA was correct in applying the new definition, his offenses do not constitute crimes of violence under 18 U.S.C. § 16 and are therefore not aggravated felonies; and because his reckless homicide conviction is not a crime involving moral turpitude.[3]

## II.  *ANALYSIS*

### A.    *Violation of Scope of Remand Order*

Saqr argues that the BIA improperly exceeded the scope of this Court's remand order by considering issues other than the one for which remand was granted.  This argument lacks merit.

In this circuit, an agency has inherent authority to reconsider a prior decision, provided that such reconsideration occurs within a reasonable time after the first decision.  *Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416-17 (6th Cir. 2004) ("*CAPPE*") (citing *Belville Mining Co. v. United States*, 999 F.2d 989, 997 (6th Cir. 1993)).  "[W]hen an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards."

---

[3]The BIA made no finding regarding whether either offense constitutes a crime of moral turpitude, which would subject Saqr to removal; rather, the BIA found the reckless homicide offense to be a particularly serious crime, which bars Saqr from obtaining relief through withholding of removal.

*Cissell Mfg. Co. v. United States Dep't of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996) (citing *South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs.*, 425 U.S. 800, 806 (1976)(per curiam)). Considerations of judicial efficiency militate in favor of remand. *CAPPE*, 375 F.3d at 417. However, where a court has considered the merits and remanded on certain issues, an agency or lower court is not permitted to review anew those issues already addressed by the reviewing court if they are not part of the remand because issues addressed on the merits and not within the scope of remand become the law of the case. *See United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999); *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997).

Here, this Court granted remand on a particular issue, which it identified in its June 28, 2006 remand order. However, at the time of remand, this Court had not considered the merits of any of the issues then before it. Therefore, the BIA properly clarified its position on certain issues. Accordingly, this Court rejects Saqr's argument that proceedings should be terminated because the BIA delineated its position on issues that were not part of this Court's remand order.

B.        *Application of Pre-IIRIRA or Post-IIRIRA Law*

This Court reviews *de novo* the BIA's determination "that a particular state conviction amounts to an aggravated felony conviction . . . because such a conclusion depends upon interpreting state statutes and federal statutes unrelated to immigration." *Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005).

This Court finds that the BIA erred when it applied the post-IIRIRA definition of "aggravated felony" to Saqr's case. Section 237 of the Immigration and Nationality Act provides that "any alien who is convicted of an aggravated felony . . . is deportable" and may be removed upon an order of the Attorney General. 8 U.S.C. § 1227(a)(2)(A)(iii). Before 1996, an aggravated felony was defined as "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years . . . ." 8 U.S.C. § 1101(a)(43)(F) (1994). In 1996, Congress expanded the definition of "aggravated felony." *See* Antiterrorism and

Effective Death Penalty Act of 1996, § 440(e), 110 Stat. 1277; Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 321, 110 Stat. 3009-627. Under the revised definition, more offenses render an alien removable in that a crime now constitutes an aggravated felony if it is "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F) (1996).

When enacting IIRIRA, Congress provided that the revised definition of "aggravated felony," while applying to all convictions regardless of when they occurred, would be effective only in "actions taken" on or after the enactment of IIRIRA. Specifically, section 321 of IIRIRA provides in relevant part:

> (b)  EFFECTIVE DATE OF DEFINITION.-Section 101(a)(43) (8 U.S.C. § 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), the term ["aggravated felony"] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."
> (c)  EFFECTIVE DATE.-The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred. . . .

P.L. 104-208, 110 Stat. 3009-628. Thus, although subsection (b) specifically provides for using the new definition of "aggravated felony" to convictions which were entered before IIRIRA's enactment date, September 30, 1996, subsection (c) limits such use to "actions taken on or after the date of enactment, regardless of when the conviction occurred." *Id.* The question then becomes what constitutes "actions taken" under § 321(c).

This Court has never squarely addressed the question of what constitutes an "action[ ] taken" under § 321(c), and the parties cite two decisions by this Court which potentially yield conflicting guidance. The Government relies upon *Asad v. Reno*, 242 F.3d 702 (6th Cir. 2001), for the proposition that the revised definition applies to proceedings commenced after September 30, 1996. According to *Asad*, and pursuant to 8 C.F.R § 1003.14, immigration proceedings "commence" on the date a charging document is filed with the Immigration Court. *Asad*, 242 F.3d at 705; 8 C.F.R

§ 1003.14. By implication, any act taken before the date of filing is not an "action taken" under § 321(c) because immigration proceedings have not commenced. Saqr, on the other hand, cites *Tran v. Gonzales*, 447 F.3d 937 (6th Cir. 2006), for the proposition that the use of the revised definition of "aggravated felony" is limited to proceedings initiated after September 30, 1996. Pursuant to 8 U.S.C. § 1229, "initiation of removal proceedings" is effected by serving the alien with the OSC or NTA.

The terms "initiate" and "commence" are not synonymous in immigration law. As this Court noted in *Asad*, "commence" is a term of art which defines when jurisdiction vests in an Immigration Court. *Asad*, 242 F.3d at 705. However, by statute, proceedings are "initiat[ed]" by providing written notice to the alien to appear before an immigration judge. *See* 8 U.S.C. § 1229 (entitled "Initiation of removal proceedings"). Additional regulations also suggest that "action taken" does not depend upon when proceedings "commence" via the vesting of jurisdiction in the Immigration Court. First, 8 C.F.R. § 236.1 authorizes the arrest and detention of aliens "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). Moreover, pursuant to 8 C.F.R. § 239.2, any officer authorized to issue a notice to appear "may cancel such notice prior to jurisdiction vesting with the immigration judge" under certain specified circumstances. 8 C.F.R. § 239.2(a). The cancellation of a notice to appear also cancels any outstanding warrants issued by the Attorney General for the alien's arrest. 8 C.F.R. § 239.2(e). Further, aliens taken into INS custody make seek release on bond, and "no charging document is required to be filed with the Immigration Court to commence bond proceedings . . . ." 8 C.F.R. § 1003.14. Given this more fully explicated statutory and regulatory scheme, it is difficult to conceive how "action taken" is limited to the time jurisdiction vests in the Immigration Court. Furthermore, the issuance of an arrest warrant by INS which has not been cancelled is more than adequate to constitute an "action taken" for purposes of triggering application of the pre-IIRIRA definition of aggravated felony.

At least two other Circuits have taken this approach in the context of whether an alien is eligible for discretionary relief under INA §212(c). *See Alanis-Bustamante v. Reno*, 201 F.3d 1303, 1310 (11th Cir. 2000) (concluding that "[c]onsiderations of fairness convince us that for purposes of deciding which law applies, the removal proceedings in this case should be viewed as commencing at least on that date . . . when the show cause order had been served and the warrant of detainer lodged"); *Wallace v. Reno*, 194 F.3d 279, 287 (1st Cir. 1999) (finding that in the context of waiver to deportation proceedings, "when an order to show cause is served on the alien, the deportation process has effectively begun"). However, at least one Circuit construing § 321(c) has taken the view that any action, including those taken much later in immigration proceedings, such as an order of removal by an Immigration Court or a decision by the BIA to uphold an Immigration Court decision, also constitutes an "action taken" under the statute. *See Garrido-Morato v. Gonzales*, 485 F.3d 319, 324 (5th Cir. 2007) (concluding that a guilty plea taken before the enactment of IIRIRA is insufficient to trigger application of the pre-IIRIRA definition of aggravated felony because the triggering event must be an action taken under the statute and stating that "the definition of aggravated felony is to be applied retroactively with respect to any action taken that implicates § 321" ). This Court has no quarrel with the Fifth Circuit's conclusion that a pre-IIRIRA guilty plea does not trigger the application of the pre-IIRIRA definition of aggravated felony because such a plea is not an action taken under the statute. However, in light of this Circuit's decisions in both *Asad v. Reno*, 242 F.3d 702 (6th Cir. 2001), and *Tran v. Gonzalez*, 447 F.3d 937 (6th Cir. 2006), the term "action taken" appears to this Court to derive from the point at which the removal action begins for purposes of determining whether the pre- or post-IIRIRA definition of aggravated felony applies. Accordingly, this Court is persuaded by the Eleventh and First Circuits that removal proceedings begin when an alien is served with a Notice to Appear.

Based upon the foregoing, this Court finds that the pre-IIRIRA definition applies to Saqr's case. Accordingly, the next question is whether either of Saqr's convictions constitutes an aggravated felony under the law in effect at that time. Neither does. To qualify as an aggravated felony under the pre-IIRIRA definition, an offense had to be a

crime of violence pursuant to 18 U.S.C. § 16 for which the term of imprisonment imposed is at least five years. Even assuming *arguendo* that one or both of the convictions qualified as a crime of violence, each conviction, independently, resulted in a term of imprisonment of only four years. Therefore, neither conviction constitutes an aggravated felony under the pre-IIRIRA definition.

C.     *Reckless Homicide as Crime of Moral Turpitude*

The final issue Saqr raises is whether the BIA erred by upholding the Immigration Court's finding that Saqr's conviction for reckless homicide constitutes a crime of moral turpitude, thereby subjecting him to removal. The BIA never addressed this issue, and the Immigration Court merely found that the level of recklessness required to result in the death of another is morally reprehensible. By stating in its August 11, 2005 order that it affirmed and adopted the decision of the Immigration Judge with amplification of only one issue--whether *Leocal* controlled on the question of reckless homicide as an aggravated felony--the BIA affirmed without comment the Immigration Court's finding that the reckless homicide conviction is a crime involving moral turpitude.[4] The record before this Court is inadequate to determine whether the BIA properly considered the Immigration Court's ruling on this issue. Accordingly, this action must be remanded to the BIA for further development of the record.

III.  *CONCLUSION*

For the foregoing reasons, this Court concludes that the BIA properly considered issues beyond the one identified in this Court's June 28, 2006 remand order. However, the BIA's finding that Saqr's conviction for second degree assault under extreme emotional disturbance constitutes an aggravated felony subjecting him to removal is REVERSED, and this action is REMANDED to the Board of Immigration Appeals. On remand, the BIA should consider whether Saqr's conviction for reckless homicide constitutes a crime involving moral turpitude.

---

[4]The BIA also did not address whether reckless homicide constitutes a particularly serious crime. However, Saqr does not raise that issue on appeal.