NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3478
_____

EDWARD LLOYD JOHNSON,
                                          Petitioner
                    v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES
_____

ON PETTION FOR REVIEW FROM A FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(BIA No. A-039-745-403)
Immigration Judge:   Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 6, 2010
Before:   SCIRICA, SMITH and WEIS, Circuit Judges.
(Filed:  December 29, 2010)
_____

MEMORANDUM AND ORDER
_____

WEIS, Circuit Judge.

        Johnson, a Jamaican citizen and legal resident of the United States for 25

years, was charged as deportable for violating New York Penal Law § 165.15, prohibiting

theft of services -- in his case, failure to pay a subway fare or, colloquially,  "turnstile

1

jumping." The government characterized these offenses as "crimes involving moral turpitude" ("CIMT"), subjecting the alien to deportation under 8 U.S.C. § 1227(a)(2)(A)(ii). The alien was arrested and has been detained since 2007.

At a hearing before an IJ in November 2007, the alien's counsel admitted the convictions under the New York statute, the maximum term of imprisonment for which is "up to 1 year." N.Y. SENT. Chart VII (listing authorized sentences for Class A Misdemeanors); see N.Y. PENAL LAW § 165.15 (theft of services is a class A misdemeanor). However, counsel stated to the IJ, "I'm actually not going admit the charge of removability. I'll let the Court make a decision on that. So I'll deny that."

After several hearings, the IJ found that the alien was a member of a social group comprised of mentally ill Jamaicans who are routinely singled out for persecution by Jamaican police as well as jail guards and, if imprisoned in that country, would be subject to conditions amounting to torture. On that basis, the IJ granted asylum but did not specifically rule on the moral turpitude designation or the U.N. Convention Against Torture.

The government appealed to the BIA, which reversed the grant of asylum because the alien had failed to establish an objectively well-founded fear of persecution. The alien then filed this Petition for Review challenging only that ruling of a lack of well-founded fear.

Our review of the record in this Petition for Review has revealed a

2

dispositive issue:  whether the alien's convictions are CIMT.  That question has not been ruled upon by either the BIA or the IJ and was not presented in the briefs.

We have the power to raise on appeal an issue *sua sponte* when the interest of justice requires it.  See Robert Leflar, Appellate Judicial Opinions 126 (1974).  See also Singleton v. Wulff, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.  We announce no general rule").  Indeed, the landmark holding in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938) -- that substantive state law is to be applied in diversity cases -- addressed an issue never raised by the parties.

In response to a pre-hearing inquiry by this Court, the alien's counsel has argued that the New York convictions are not CIMT.  The government contends that we lack jurisdiction because the alien has failed to exhaust administrative remedies under 8 U.S.C. § 1252(d)(1), which states, "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."

There is considerable debate as to whether "remedies" includes specific issues in a particular proceeding.  See Lin v. Att'y Gen., 543 F.3d 114, 119-20 & n.6 (3d Cir. 2008) (summarizing discussion).  Given the circumstances here, however**,** we need not confront that question at this time. In this preliminary matter, there is no administrative ruling to address, but rather the lack of a ruling on a dispositive issue -- in

3

short, an incomplete record capable of supplementation on a question of law, not fact. We do not rule on the merits, but instead defer such ruling until a complete record is before us.

The specific issue left open in the administrative proceeding is whether a violation of the New York statute amounts to a crime involving moral turpitude. Just what criminal activities fall in that category is far from clear, but both our precedents and the BIA's definition provide some guidance.

The BIA has defined "moral turpitude as conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." Partyka v. Att'y Gen., 417 F.3d 408, 413 (3d Cir. 2005). We quoted that definition in Partyka and went on to say, "[a] longstanding test employed by the BIA to determine the existence of moral turpitude, which we find persuasive in a removal proceeding, asks 'whether the act is accompanied by a vicious motive or corrupt mind.'" Id. at 413.

In Jean-Louis v. Att'y Gen., 582 F.3d 462, 477 (3d Cir. 2009), we emphasized that CIMT "refers to a specific class of offenses, not to all conduct that happens to 'involve' moral depravity, because of an alien's specific acts in a particular case." "[I]t is the offense that must be scrutinized for the requisite degree of depravity. . . . [T]he central inquiry is whether moral depravity inheres in the crime or its elements." Id. See also Knapik v. Att'y Gen., 384 F.3d 84, 89 (3d Cir. 2004) (noting the BIA

4

definition of CIMT as conduct that is base, vile, depraved, or *malum in se*).

The New York statutory provision under which Johnson was convicted provides that

> "A person is guilty of theft of services when:
>
> "* * * *
>
> "(3)  [w]ith intent to obtain railroad, subway . . .
> or any other public transportation service
> without payment of the lawful charge therefor,
> or to avoid payment of the lawful charge for
> such transportation service which has been
> rendered to him, he obtains or attempts to obtain
> such service or avoids or attempts to avoid
> payment therefor by force, intimidation, stealth,
> deception or mechanical tampering, or by
>  unjustifiable failure or refusal to pay."

N.Y. PENAL LAW § 165.15(3).

The criminal conviction here is based on avoiding payment of subway transportation service, a narrow statutory offense.  Rather than exploring the text of the statute, the immigration judge and alien's counsel analogized the offense to shoplifting and agreed that, regardless of the amount involved, a CIMT had been established.

The only record reference is the point occurred during a hearing before the immigration judge on November 6, 2007.

> "Judge:  '[W]hat is this?  Jumping the turnstile?'
> Alien's Counsel:  'That's my understanding.  Yeah.'
> Judge:  'It's the same as shoplifting basically.  You're taking
> service, you're taking merchandise.  It's stealing.'

5

Alien's Counsel: 'Correct.'
Judge: 'CIMT. It's pretty clear about that.'"

That simplistic analysis of the crime, and the failure to consider other CIMT factors such as baseness, vileness, and moral depravity, created a serious gap in an otherwise careful and compassionate presentation by counsel and review by the IJ. That mutual lapse may have been caused by understandable and inadvertent confusion with the term "theft offense" set forth in 8 U.S.C. § 1101(2)(43)(G), or simple oversight in preparing the IJ opinion.

The government contends that matters of this nature should be decided in the first instance by the administrative agency, and we do not disagree. In Cruz v. Att'y Gen., 452 F.3d 240 (3d Cir. 2006) we remanded to the BIA the question of whether an alien remained guilty of a CIMT after the underlying conviction was vacated by state court. Noting the importance of a decision by the agency in the first instance, we remanded to the BIA for supplementation of the record as to whether the alien was convicted of CIMT before we adjudicated the Petition for Review. That procedure is particularly apt here because the problem is one of law rather than fact and will require little additional work in the administrative process. See id. at 248-50; Saqr v. Holder, 580 F.3d 414 (6th Cir. 2009) (record inadequate to determine whether BIA considered IJ's ruling on an issue).

In the circumstances here, particularly because we have identified an important dispositive issue *sua sponte*, we conclude that the proper course of action is to

6

remand to the BIA to determine if the alien's conviction was for CIMT, and we will so order.[1]

## II.

In 2007, the Attorney General ordered the alien to be placed on detention pursuant to 8 U.S.C. § 1226(c), which provides that he "shall take into custody any alien who . . . is deportable by reason of having committed" certain specific crimes, including two or more crimes involving moral turpitude. Id. § 1226(c)(1)(B). The alien here has been incarcerated for three years for a petty offense.

8 U.S.C. § 1226(e) provides that "[n]o court may set aside" a decision of the Attorney General "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." However, the Supreme Court has held that the federal courts retain jurisdiction over certain detention cases. See Demore v. Kim, 538 U.S. 520, 531-33 (2003). Justice Kennedy's concurring (and controlling) opinion cautioned that "due process requires individualized procedures to ensure that there is at least some merit to the Immigration and Naturalization Service's (INS) charge, and, therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing." Id. at 532. "Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of

---

[1] We observe also that, if the BIA determines that no CIMT is present, the deportation

flight or dangerousness, but to incarcerate for other reasons." Id. at 532-33.

The IJ described the alien as "a forty-two-year old single male" who "while . . . a quiet individual who poses no danger to himself or to others, apparently . . . refuses to take prescribed medications to ameliorate a mental illness."

As we have indicated, there exists a substantial doubt whether the basis for detention, commission of CIMT, is valid here. Moreover, the alien is neither violent nor threatening and the crime is petty, carrying a statutory penalty of imprisonment "up to 1 year." The need for individual assessment for continued detention here is apparent. Accordingly, we will include on remand a direction for a prompt hearing to determine if a release on nominal bond is appropriate.

---

proceedings will terminate because of failure to establish the underlying charge.

_____

Please file the attached Memorandum.

/s/ JOSEPH F. WEIS , JR.
Circuit Judge

DATED: December 29, 2010

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3478
_____

EDWARD JOHNSON,
Petitioner
v.

ERIC H. HOLDER, JR.
ATTORNEY GENERAL OF THE UNITED STATES
_____

ON PETTION FOR REVIEW FROM A FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(BIA No. A-039-745-403)
Immigration Judge:   Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 6, 2010
Before:   SCIRICA, SMITH and WEIS, Circuit Judges.
_____

**O R D E R**

This cause came to be heard on the record of the Board of Immigration

Appeals pursuant to a Petition for Review of the Board's decision.  On consideration

whereof, it is now here

ORDERED by this Court that the case is REMANDED to the Board of

Immigration Appeals for supplementation of the record in accordance with the

Memorandum of this Court.

10

It is further ORDERED that on remand the alien be afforded a prompt hearing to determine if he is to be released on bond, pending resolution of these proceedings.

This Court shall retain jurisdiction pending the proceedings on remand. The Respondent is directed to file status reports 120 days from the date of this order and every 120 days thereafter until the proceedings on remand are concluded.

By the Court,

/s/ JOSEPH F. WEIS, JR.
United States Circuit Judge

Dated:		December 29, 2010