*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

QUANG LY TRAN,

*Petitioner,*

*v.*

Nos. 04-3800; 05-3734

ALBERTO R. GONZALES, Attorney General,

*Respondent.*

---

On Petition for Review of a Decision of the Board
of Immigration Appeals.
No. A25 153 243.

Argued: April 25, 2006

Decided and Filed: May 17, 2006

Before: GUY, DAUGHTREY, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Alice E. Loughran, STEPTOE & JOHNSON, Washington, D.C., for Petitioner. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Respondent. **ON BRIEF:** Alice E. Loughran, Jack R. Hayes, STEPTOE & JOHNSON, Washington, D.C., Stephen W. Funk, ROETZEL & ANDRESS, Akron, Ohio, for Petitioner. Christopher R. Yates, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, Aviva L. Poczter, Emily A. Radford, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

**OPINION**

---

RALPH B. GUY, JR., Circuit Judge. Petitioner seeks review of a decision from the Board of Immigration Appeals (BIA) ordering that petitioner, Quang Ly Tran, an ethnic Chinese from Vietnam, be removed to Vietnam. The BIA reversed the decision of the immigration judge (IJ), who had found Tran removable because he had been convicted of an aggravated felony, but deferred his deportation because Tran qualified for protection under the Convention Against Torture (CAT). In two appeals consolidated for our review, Tran argues that the BIA erred by retroactively applying the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) to Tran's pre-IIRIRA felony convictions and by concluding that Tran is not eligible for protection under the CAT. We conclude that the IIRIRA's provision allowing for the deportation of aliens convicted of an aggravated felony was properly applied to Tran's pre-IIRIRA conviction, but we remand Tran's

1

CAT claim to the BIA for clarification of the standards and burdens of proof it employed in reviewing Tran's appeal.

## I.

Tran was born in South Vietnam to Chinese parents who had immigrated to Vietnam during French colonization. The family never assimilated into Vietnamese culture, and Tran does not speak Vietnamese. In 1978, Tran's family fled Vietnam to Hong Kong. Tran and his family entered the United States in 1980 as refugees and later adjusted their status to lawful permanent residents. Several of his immediate family members became United States citizens.

Tran was charged in Ohio state court in 1987 of aggravated murder and robbery. A jury found Tran guilty and, in May 1988, during the appeals process, he entered into a plea agreement in which he agreed to plead guilty to the charged crimes and serve a term of 20 years in exchange for the prosecution dropping its request for the death penalty. At the hearing on the plea agreement, the trial court asked the defense counsel if Tran had been advised of the immigration consequences of his plea. Tran's counsel responded that Tran had been advised that the INS's practice was not to deport people to Vietnam because there were no diplomatic relations between the two countries. The trial court approved the plea agreement in May 1988. INS officials visited Tran in prison shortly after he began serving his sentence and asked him to sign a paper agreeing to his deportation. Tran refused.

The INS filed an Order to Show Cause charging Tran with being deportable as an alien convicted of two crimes involving moral turpitude not arising out of the same criminal scheme. 8 U.S.C. § 1251(a)(4) (1988) (repealed). Tran appealed the removal order to the BIA, arguing that the INS had failed to meet its burden to show that the two crimes did not arise out of the same criminal scheme. The Board sustained Tran's appeal and terminated the deportation proceedings because the evidence suggested that Tran's two crimes occurred in the course of a single criminal episode. The Board did not terminate the removal proceedings "without prejudice," and the INS has never sought reconsideration or reopening of that case.

In 1996, Congress enacted the IIRIRA to restructure the removal process for deportable aliens. Title III-A of the IIRIRA streamlined the removal process for criminal aliens by mandating detention pending removal proceedings, eliminating the principal forms of relief from deportation, eliminating direct judicial review, and mandating that the Attorney General shall remove aliens within 90 days. 8 U.S.C. §§ 1101(f)(3) and (8); 1158(b)(2)(B); 1226(c) and (e); 1229; 1231(a), (b)(1)(A) and (C); 1252(a)(2)(C) (2000). The IIRIRA provided that these changes would be applied only to aliens placed in deportation proceedings after April 1, 1997. IIRIRA, Pub. L. No. 104-208, § 309(a), 110 Stat. 3009-625 (1996) (8 U.S.C. § 1101 note).

Section 321 of the IIRIRA amended the term "aggravated felony" as it appears in the general definition provisions at the start of the Immigration and Naturalization Act. 8 U.S.C. § 1101(a)(43)(F) (2000). That amendment carries two effective date provisions. Section 321(b) made the expanded definition applicable "regardless of whether [a] conviction was entered before, on, or after" September 30, 1996. 8 U.S.C. § 1101(a)(43) (2000). Section 321(c) provides that "[t]he amendments made by this section shall apply to action taken on or after the date of the enactment of this Act [September 30, 1996] regardless of when the conviction occurred." Pub. L. No. 104-208, 110 Stat. 3009-546.[1]

---

[1] The details of how the definition of an "aggravated felony" was expanded are not relevant here since murder was already included as an "aggravated felony." It is the section of the IIRIRA that allows the "aggravated felony" provision to be applied to old convictions that is relevant. The statutory provision allowing for the deportation of an alien convicted of an aggravated felony was first enacted in 1990, but the statute provided it would apply only to aliens who

In December 2000, the INS initiated the new streamlined removal process against Tran. The INS relied on 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," and which provision was now available to pre-1988 crimes per § 321(b) of the IIRIRA. The INS relied on the same 1988 convictions that were the subject of the first deportation proceedings.[2]

## II.

Our review of Tran's appeals is limited by 8 U.S.C. § 1252(a)(2)(C) and (D). Paragraph (C) precludes courts from reviewing any "final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) [convicted of an aggravated felony]." Paragraph (D), added by Congress in 2005, provides an exception: "Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. §1252(a)(2)(D).

Notwithstanding paragraph (C), this court retains the authority to review jurisdictional facts on which removal proceedings are based by ascertaining whether Tran is covered by paragraph (C)'s bar on reviewability by virtue of being an alien convicted of an aggravated felony. *See Drakes v. Zimski*, 240 F.3d 246, 247 (3rd Cir. 2001). If "'the statute is silent or ambiguous with respect to the specific issue,'" we must decide "'whether the agency's answer is based on a permissible construction of the statute.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

## A.    Application of the IIRIRA to Tran's 1988 Convictions

Tran argues that Congress did not intend for the IIRIRA's changes to the aggravated felony provision to include convictions that were previously the subject of closed deportation proceedings. Our resolution of this issue is governed by established rules of statutory construction. "In all cases of statutory construction, the starting point is the language employed by Congress. Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir. 1998) (internal quotation marks and citations omitted.) "The court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Id.*

Here, the statute's language is plain, and Tran's interpretation would force us to read into it an exception Congress did not provide. Tran admits that § 321(b) is an explicit statement of congressional intent to apply the aggravated felony provision to convictions entered before the law's

_____

had been convicted on or after the enactment date of the law (November 18, 1988). Pub. L. No. 100-690. Since Tran's convictions were entered in May of 1988, the provision allowing for the deportation of any alien convicted of an aggravated felony was not available in 1990.

[2] Tran filed a petition for review in this Court challenging the agency's finding that he is deportable as an alien convicted of aggravated felonies. Tran then filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the U.S. District Court for the Southern District of Ohio challenging the denial of any affirmative relief from deportation. At the time, filing a habeas petition was the proper procedure for challenging the determination of his CAT claim. During the pendency of the habeas action, however, Congress removed habeas jurisdiction in immigration cases and directed that all pending cases be transferred to the applicable Court of Appeals. Real ID Act of 2005. Pub. L. No. 109-13, § 1061(c), 119 Stat. 231 (2005) (8 U.S.C. § 1252 note). The district court transferred Tran's habeas petition to this court, and we consolidated it with Tran's previously filed appeal.

enactment.  In fact, in a Supreme Court case in which the Court was called upon to determine if Congress intended  another section of the IIRIRA to apply retroactively, the Court used § 321(b) as an example of an unambiguous statement of Congress's retroactive intent.  *INS v. St. Cyr*, 533 U.S. 289, 318-19 (2001).

Tran's argument that we should construe an exception for convictions that previously served as the factual basis for an unsuccessful deportation attempt relies on § 321(c).  Section 321(c) explicitly limits the application of the revised definition of "aggravated felony" to proceedings initiated after September 30, 1996.  Section 321(c) is a restriction on Section 321(b).  As the agency itself has held, even though § 321(b) established that the revised definition of an aggravated felony can encompass any conviction regardless of when it occurred, "Section 321(c) . . . limit[s] the definition . . . by stating that the amendments will apply only to 'actions taken' after the date of the IIRIRA's enactment, September 30, 1996."  *Matter of Truong*, 22 I. & N. Dec. 1090, 1096 (BIA 1999).  We need not go through a lengthy statutory analysis to conclude that § 321(c) is not retroactive since the language of the section speaks for itself.  Section 321(c) explicitly limits the expanded definition of "aggravated felony" to prospective deportation proceedings.  The problem with Tran's position is that this proceeding began in December 2000, well after § 321(c)'s temporal limitation.

Tran also argues that the statute does not explicitly apply to previously closed cases and that, without explicit statutory approval, we should not allow its application to previously closed cases.  A closed proceeding, however, is not at issue in this case.  Instead, Tran is subject to removal proceedings on an entirely different charge.

Tran seeks to overcome these obstacles by arguing that if the government was allowed to proceed even though it had tried and lost once before, the "on or after" language is no limitation at all because the INS can circumvent that temporal limitation entirely by simply instituting a new proceeding.  He contends that such an interpretation turns "the temporal limitation in Section 321(c) on its head."  As Tran himself admits, however, policy arguments cannot prevail over the text of a statute.  *See Cent. Bank v. First Interstate Bank*, 511 U.S. 164, 188 (1994) ("Policy considerations cannot override . . . the text and structure of the Act"); *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996) (holding it is improper to disregard "the Congressional intent clearly expressed in the text simply by asserting that its preferred approach would be better policy").

## B.    CAT Claim

Tran's second appeal concerns the BIA's rejection of his claim for protection under the CAT.  To obtain relief under the CAT, the applicant bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  A court is instructed to look at all relevant evidence relating to the possibility of future torture, including:  (1) evidence of past torture inflicted on the applicant; (2) evidence that the applicant could relocate to a part of the country where he is likely not to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country to which the applicant will be removed; and, (4) other relevant information about the country to which the applicant will be removed.  8 C.F.R. § 208.16(c)(3).

Tran presented the following evidence to show the probability that he would face torture upon return to Vietnam.  He testified that following the Vietnam war, in which his eldest brother served as an informant for the United States Army, the communists captured his brother and repeatedly tortured him in prison camps.  Specifically, they beat Tran's brother with an AK-47 gun, cut him severely enough to leave many scars, starved him, put a gun to his head acting as if they would shoot him, hung him by his feet while interrogating him, and put him in a hole in the ground with rats.  Tran's father and another brother were imprisoned, beaten, and put in "re-education

camps" because they fought in the war. The communists knew that Tran's family had served in the South Vietnamese Army because they had acquired the salary records of the soldiers. The communists confiscated the property of Tran's family. Shortly before fleeing Vietnam in 1979, Tran received a draft order for service in the Vietnamese military, but he refused to serve. His family paid money to flee Vietnam without proper documentation or approval of local authorities, who would have killed Tran and his family if they had known. Tran testified that he believes the communists will detain him at the airport if he is forced to return to Vietnam because (1) the communists would know that he is ethnic Chinese because he does not speak Vietnamese and has Chinese physical features, (2) the communists would know that his father and brother served in the South Vietnamese Army because they still have the service records, and (3) he has no family living in Vietnam. Tran believes he will be tortured once detained by the communists.

Dr. Alain Marsot, who testified for Tran as an expert on Vietnam,[3] stated that the Vietnamese have a deep and long-held hatred of the Chinese. When the communists took control of Vietnam in 1975, they tried to drive the Chinese out by imposing severe political and economic restrictions against the Chinese and Chinese property. They also expelled whole groups of Chinese. Many Chinese decided to flee Vietnam on boats to other countries as refugees. Marsot also explained that Vietnam is a dictatorial government with no independent judiciary. There is no freedom of speech or freedom of religion. Marsot predicted that if Tran were forcibly returned to Vietnam, he would be detained at the airport and subjected to abuse. The federal officers escorting Tran would be an indication to the communists that Tran was being deported for a criminal offense. Tran would face torture and execution for having been convicted of a serious crime. Vietnam is a poor country and does not want American criminals. Second, the communists would be immediately suspicious of anyone returning from a foreign country, and Tran would face more than a 50% risk of being tortured so that they could determine whether he works for a foreign organization. Third, the communists would torture him because he is of Chinese origin. Consequently, Marsot testified that Tran faced a greater than 50% chance of torture if returned to Vietnam because the Vietnamese authorities would consider him to be a suspected spy or threat to national security, a serious criminal, and an Americanized deportee who was an ethnic Chinese who could not speak Vietnamese and had no family in Vietnam. Marsot stated that he was not aware of any Vietnamese citizen who fled the communist regime and then returned to Vietnam to live.

Tran presented documentary evidence showing the following: (1) Vietnamese officials torture people in detention or during interrogation, including beating, kicking, and shocking with electric batons; (2) there is no access to detainees in the early stages of detention, "allowing situations to arise where torture and cruel, inhuman or degrading treatment can easily take place"; (3) innocent people in Vietnam are tortured because of their ethnicity or pro-democracy beliefs; and (4) Vietnam does not allow international groups such as the Red Cross or the United Nations Human Rights Commission to monitor human rights conditions.

Pursuant to § 1252(a)(2)(C) and (D), our review of Tran's CAT claim is limited to questions of law or constitutional issues. Therefore, our jurisdiction is limited to the legal issues Tran presents—whether the BIA used the correct standard in reviewing the IJ's decision and whether it assigned to him the correct burden of proof. *See Hamid v. Gonzales*, 417 F.3d 642 (7th Cir. 2005) (holding that § 1252(a)(2)(D) barred review of the petitioner's CAT claim where he urged the court to review whether the BIA correctly considered, interpreted, and weighed the evidence presented, which was not a question of law or a constitutional issue).

The BIA reviews an IJ's findings of fact for clear error. "The Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the

---

[3]Dr. Marsot's qualifications as an expert on Vietnam were not challenged by the INS or the immigration judge.

immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(I) (2004). "Under the new regulatory provision, the Board will not engage in *de novo* review of findings of fact determined by an Immigration Judge in any case in which the appeal is filed on or after September 25, 2002." *In re S-H*, 23 I. & N. Dec. 462, 466 (BIA 2002).

"A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). The BIA's decision never stated the standard of review that it employed in reaching its conclusion, and the words "clear error" do not appear. The BIA's opinion was based on the conclusion that there were several deficiencies in the evidence. First, the BIA noted, there was no evidence of any mistreatment against returnees to Vietnam, let alone returnees who had committed serious crimes in other countries or returnees whose families had opposed the communist regime. Second, the Board observed that "although the documentary evidence shows that longstanding societal discrimination against ethnic minorities is widespread, the documentary evidence does not report that ethnic Chinese face harm that rises to the level of torture." Third, the Board found Tran's expert's opinion as to the likelihood of Tran facing torture if returned "too speculative," because it was not based on any objective evidence of the treatment of returnees.

In addition to challenging whether the BIA reviewed his CAT claim for clear error, Tran also raises the issue of whether the BIA applied the correct burden of proof. Tran contends that the BIA improperly elevated Tran's burden of proof beyond the "more likely than not" standard by disaggregating his proffered bases for torture, effectively requiring that he establish a greater than 50% likelihood of being tortured on each individual basis. Tran contends that, instead, the BIA should have considered the proffered bases in combination, looking to the likelihood that Tran would be tortured because of his status as a Chinese returnee with a serious criminal record and no family or friends in Vietnam, who has been in the United States for an extended period of time, and whose family members opposed the communist regime. Finally, Tran argues that the BIA placed an impossible burden on him—a burden to prove that other returnees faced torture when, in fact, Vietnam does not accept returnees.

The BIA opinion's lack of reference to any standard of review and its treatment of Tran's claims does not make it evident to this Court what standard of review the BIA employed. The standard of review is particularly significant in Tran's case because the IJ granted withholding of removal under the CAT, and Tran presented unrebutted expert testimony as to his likely treatment in Vietnam. Because BIA review under an incorrect standard of review implicates Tran's due process rights, we conclude that remand to the BIA is appropriate for its consideration of Tran's CAT claim under the correct standard of review and burden of proof.

The petition for review is **DENIED** in part, **GRANTED** in part, and **REMANDED** to the BIA for proceedings consistent with this opinion.