NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0534n.06

**No. 09-3478**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 20, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FADI HUSSEIN NASSER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR. | ) | |
| | ) | |
| Respondent. | ) | |

Before: SILER, and CLAY Circuit Judges; GRAHAM, District Judge.[*]

**SILER**, Circuit Judge. Petitioner Fadi Hussein Nasser, a citizen of Lebanon, petitions for review of a Board of Immigration ("BIA") order. The order, while overruling the Immigration Judge's ("IJ") adverse credibility determination and remanding for review of Nasser's request for voluntary departure, affirmed the IJ's denial of Nasser's applications for withholding of removal under the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. §§ 1158 and 1231, and Article 3 of the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("CAT" or "the Treaty"), 8 C.F.R. § 208.16(c).

For the following reasons, we **DENY** Nasser's petition.

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. FACTS AND PROCEDURAL BACKGROUND

Nasser illegally entered the United States through Mexico in 2001. After being served with a notice to appear pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), Nasser attended an initial hearing in May 2005. Eventually, he submitted an application for withholding of removal and voluntary departure under the Act and a petition for withholding of removal under the Treaty.[1]

In May 2007, Nasser testified in support of his application at the merits hearing. He stated that he was a citizen of Lebanon; his father had died ten years earlier; his mother was currently residing in the family home in Kfarhatta, Lebanon; and his brother and sister were living in Dubai and Germany, respectively.

He stated that he served in the Lebanese army after high school. Upon his release from the military in 1994, he opened an ice cream and liquor store. Every two or three months, Hizballah[2] requested permission to place a donation box in his store. Each time, Nasser declined. Hizballah then began to spread gossip about his store selling alcohol. According to Nasser, Hizballah's actions resulted in a sharp decline in his business, because his Muslim patrons were prohibited from purchasing alcohol and his remaining patrons—mostly Christian—stopped frequenting his store due to Hizballah's perceived presence. In 2000, Nasser closed his store because, according to him, he could no longer afford to eat. Although he found other work, the pay was not enough to feed himself.

---

[1]He did not object to the IJ's conclusion that he was time barred from receiving asylum, pursuant to the INA, nor did he seek asylum.

[2]We employ the spelling used by the State Department.

He considered re-locating his store to Beirut, but decided against it after determining that the cost was prohibitive.

Nasser departed for the Netherlands in 2001. From there, he traveled to Mexico, and then to the United States. He stated that he would not have entered the United States if he had been able to "feed [him]self" in Mexico.

Nasser also recalled a 1995 neighborhood shooting during which his family home was burned down, an act he attributed to Hizballah. In addition, he testified that his father had resisted Hizballah. Finally, he recalled that when his older brother was recruited by Hizballah to work as a guard at the age of eighteen, Nasser's father sent him to work in the United Arab Emirates.

None of Nasser's family members provided affidavits in support of his petition. He explained that his mother was illiterate and could not find anyone to help her write a letter. He did not think to ask his brother to corroborate his testimony. However, he maintained that he would be unable to earn a living if returned to Lebanon. He also submitted Country Reports and other documents to support his claims.

The IJ made an adverse credibility determination, held that Nasser did not meet his burden to demonstrate persecution under either the Act or the Treaty, and denied his application. He also denied Nasser's request for voluntary departure and ordered Nasser removed.

On appeal, the BIA reversed the IJ's credibility determination and denial of voluntary departure and remanded for a re-consideration of Nasser's eligibility for voluntary departure pursuant to INA § 240(B)(b). However, the BIA affirmed the IJ's denial of withholding of removal claims. After the BIA's order issued, Nasser withdrew his petition for voluntary departure. He argues that

the BIA erred by applying the wrong standard of review to his withholding claims. He also maintains that substantial evidence does not support the BIA's order affirming the IJ's denial of his withholding claims.

## II. DISCUSSION

### A. BIA's Standard of Review

Nasser argues that the BIA incorrectly applied a de novo standard of review in deciding his withholding claims. We will vacate and remand the BIA's decision if it applies an improper legal standard. *See Tran v. Gonzales*, 447 F.3d 937, 943-44 (6th Cir. 2006). However, we have never held that the BIA's failure to state its level of review automatically warrants vacation. In *Preldakaj v. Keisler*, 252 F. App'x 79 (6th Cir. 2007), for example, we addressed the question of whether the BIA was required to "explicitly describe its level of review" when reviewing an IJ's adverse credibility finding. *Id.* at 84. We determined that such a statement was not required, because the "text of the [BIA's] opinion" demonstrated that "the BIA engaged in the appropriate review for clear error" of the IJ's factual findings. *Id.* In contrast, in *Tran* we vacated the BIA's order overruling an IJ's decision to grant withholding under the CAT, where the BIA failed to state a standard of review in its order. 447 F.3d at 943-44. Unlike *Preldakaj,* the BIA's "treatment of Tran's claims [did] not make it evident to this Court what standard of review the BIA employed." *Id.* at 944. Moreover, on appeal, Tran alleged that the BIA improperly elevated his burden of proof from the "more likely than not" standard under CAT. *Id.* These concerns led the panel to remand to the BIA "for its consideration of Tran's CAT claim under the correct standard of review and burden of proof." *Id.*

Here, Nasser does not argue that the BIA applied an incorrect burden of proof to his case, as did the petitioner in *Tran*. Instead he claims only that the BIA used an incorrect standard of review—namely, that the BIA made a de novo inquiry into the facts of his case. The BIA's opinion, however, belies such a conclusion. After reviewing the IJ's findings of fact for clear error, the BIA affirmed the IJ's decision that Nasser failed to sustain the proof necessary to qualify for withholding of removal under the INA or the CAT. To reach this decision, the BIA reviewed the IJ's factual findings and determined that they did not support a finding of either past or future persecution. It noted that Nasser's testimony about his store, Hizballah's part in its failure, and his unsuccessful efforts to procure new employment, were not sufficient facts to establish past persecution. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 625 n.9 (6th Cir. 2004) ("Economic deprivation constitutes persecution only when the resulting conditions are sufficiently severe." (citations omitted)). In addition, the BIA briefly stated that Nasser failed to demonstrate that he was more likely than not to face persecution or torture if returned to Lebanon.

Although the BIA's decision, in addressing Nasser's withholding claim, does not explicitly state that it is reviewing the facts for clear error, the opinion as a whole demonstrates the BIA's cognizance and application of both the correct standard of review and burden of proof. Thus, the "text of the [BIA's] opinion" demonstrated that it "engaged in the appropriate review for clear error [as to the IJ's factual determinations]" and a de novo review when applying those facts to the applicable burden of proof. *Preldakaj*, 252 F. App'x at 84; 8 C.F. R. § 1003.1(d)(3)(ii) ("The [BIA] may review questions of law, discretion, and judgment and all other issues in appeals from decisions

of [IJs] de novo."); *Matter of A-S-B*, 24 I&N Dec. 493, 497 (BIA 2008)[3] (interpreting 8 C.F.R. §

1003.3(d)(3) to require that the BIA review whether an applicant has met his burden of proof under

a de novo standard).[4]

## B. Withholding of Removal

### 1. Standard of Review

"[We] review[] the decision of the BIA where, as here, it has rendered its own opinion." *Koulibaly

v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008) (citing *Anssari-Gharachedaghy v. INS*, 245 F.3d 512,

513 (6th Cir. 2000)). "[W]e uphold a BIA determination as long as it is supported by reasonable,

substantial, and probative evidence on the record considered as a whole." *Marku v. Ashcroft*, 380

F.3d 982, 986 (6th Cir. 2004) (internal quotation marks and citation omitted). "A reviewing court

should not reverse simply because it is convinced that it would have decided the case differently."

*Sylla v. INS*, 388 F.3d 924, 925-26 (6th Cir. 2004) (internal quotation marks and citation omitted).

Rather, to reverse, we must find that the evidence compels a contrary conclusion. *Id.*

---

[3]We defer to this interpretation, unless "plainly erroneous or inconsistent with the [language of 8 C.F.R. § 1003.3(d)(3)]." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted).

[4]Nasser also argues that the BIA violated his due process rights by engaging in de novo fact finding. As previously discussed, the BIA did not engage in improper fact finding. Moreover, the general "clearly erroneous" standard is constitutional even where the reviewing body "discovers that some of the fact-finder's conclusions were erroneous." *Assi v. Gonzales*, 193 F. App'x 456, 463 (6th Cir. 2006).

**2. Merits**

"To prevail on a petition for withholding of removal under the INA [or] the CAT, an alien must show that there is a clear probability that [he] would be subject to persecution [on account of race, religion, nationality, membership in a particular social group, or political opinion], for the INA, or to torture, for the CAT." *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007) (internal quotation marks and citation omitted). "The regulations define the 'clear probability' standard as requiring that '[a]n applicant who has not suffered past persecution . . . establish that it is more likely than not' that [he] would be persecuted or tortured on the basis of one of the protected grounds upon [his] return." *Jin Zhou Zheng v. Holder*, 339 F. App'x 592, 595 (6th Cir. 2009) (quoting 8 C.F.R. § 1208.16(b)(2)).

### i. Withholding Under the Act

Under the INA, when an applicant "is determined to have suffered past persecution in the proposed country of removal on account of [a protected ground],"[5] a rebuttable presumption of future persecution arises. 8 C.F.R. § 208.16(b)(1)(i). Persecution consists of "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998). Although economic persecution may constitute past persecution, Nasser must demonstrate that he endured a "deliberate imposition of severe economic disadvantage or the

---

[5]Because Nasser failed to demonstrate "persecution," we need not decide whether he sufficiently connected his difficulties in finding employment in Lebanon to one of five statutory grounds, as required by the Act. Thus, we do not address his imputed political opinion argument.

deprivation of liberty, food, housing, employment, or other essentials of life." *Scavenger v. Mukasey*, 313 F. App'x 816, 818 (6th Cir. 2008) (internal quotation marks and citation omitted). An applicant's own actions—for example, his refusal to consider alternate types of employment—may preclude a finding of persecution. *Id.* at 819-20 (noting that petitioner "refused to look into or accept certain types of employment before she left [her home country]" and further remarking that "one cannot bring a cognizable economic persecution claim merely because a weak economy has undermined one's job prospects or because it has undermined one's preferred job prospects").

Neither Nasser's forced change in occupation nor the fact that Hizballah is gaining influence in Lebanon compels a finding that Nasser was completely unable to find a means of support in his home country. For example, Nasser testified that his cousin supported his mother in his hometown with his earnings as a taxi driver. Nasser's family also owned property in Lebanon, and he had siblings who lived abroad. It is reasonable to assume that Nasser could have sought assistance from one of these family members upon losing his store. *See Jaars v. Gonzales*, 148 F. App'x 310, 315 (6th Cir. 2005) ("The newspaper articles provided by petitioners do not support their assertions that it would be nearly impossible for them to find jobs."). Consequently, the BIA's conclusion that Nasser failed to demonstrate past persecution based on severe economic deprivation was a reasonable one, and the record does not compel otherwise.

Similarly, the BIA's conclusion that Nasser failed to establish a clear probability of future persecution is not one that *no* reasonable factfinder could reach. Although, economic deprivation that is "purposeful, direct, and substantial" may constitute future persecution, *id.,* such is not the case

here. Nasser testified that he had no contact with Hizballah after his store closed in 2000, and he has not alleged that Hizballah would purposefully prevent him from getting a job on his return to Lebanon. Moreover, the evidence of Hizballah's growing strength in Lebanon fails to show that Hizballah will interfere with Nasser's job search. Consequently, the record does not compel a contrary conclusion.

### ii. Withholding Under the Treaty

In contrast to the Act, the Treaty requires that an applicant establish a "particularized threat of torture," *Castellano-Chacon*, 341 F.3d at 551, although he need not demonstrate that the "harm [he] faces is based on one of the five [statutory] grounds . . . required under the INA." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006). Substantial evidence supports the BIA's determination that Nasser failed to establish past or future torture.

For the aforementioned reasons, we **DENY** review.