NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0276n.06

Nos. 22-5025/5074

## UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

**FILED**
Jun 13, 2023
DEBORAH S. HUNT, Clerk

BRYANNA SOPER (22-5025); DOUGLAS
EDMONSON (22-5074),

    Defendants-Appellants,

v.

UNITED STATES OF AMERICA,

    Plaintiff-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: CLAY, McKEAGUE and STRANCH, Circuit Judges.

**CLAY, Circuit Judge**. Defendants Bryanna Soper and Douglas Edmonson appeal their within-Guidelines sentences. Soper pleaded guilty pursuant to a written plea agreement to one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and Edmonson pleaded guilty without any formal plea agreement to one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). For the reasons set forth below, we **AFFIRM** the district court's judgment as to both Defendants.

## I. BACKGROUND

### Factual Background

Bryanna "Bree" Soper and Douglas "Garp" Edmonson are the two Defendants subject to this appeal. Edmonson was a methamphetamine dealer living in Kentucky and Soper was his girlfriend.[1]

---

[1] All testimony referenced in this section is based on direct and cross examinations conducted during Edmonson's sentencing hearing. Soper did not have witness testimony in her sentencing hearing as her objections to sentencing did not require a thorough analysis of the factual history of the case. Because the alleged events that occurred during the kidnapping involve the same parties, the Court uses the witness testimony in Edmonson's sentencing hearing as the basis for the factual history for both Defendants.

On or about August 10, 2018, and continuing into August 11, 2018, Edmonson, Soper, Dallas Chain Perkins, Erik Peace, and James King (now deceased), kidnapped the victim for the purpose of assaulting her for repayment of a drug debt. During the commission of the offense, the victim was transported across a state line, from Tennessee into Kentucky.

Two individuals testified that, prior to the kidnapping, Edmonson attempted to recruit them to assist with the crime; however, Edmonson denies that he took part in any recruitment efforts. Herbert Hood, a methamphetamine dealer who sold drugs with Edmonson, testified that Edmonson asked Hood to help him kidnap someone in Jellico, Tennessee, because Edmonson claimed that the person had "ripped him off" in a methamphetamine deal. (Edmonson Sentencing Tr., R. 346, Page ID # 1279–80). Hood testified that he declined to help, and that Edmonson asked if he thought Dustin Walters, who was "also in the dope game at the time," would assist in the kidnapping. (*Id*., Page ID # 1280–81). Hood responded that he thought Walters also would not help. Walters testified that Edmonson visited him in his home and asked if he would participate in kidnapping "a girl" who "had some money or some drugs that belonged to him and that he was going to try to hold her for ransom and get somebody to pay it." (*Id.*, Page ID # 1266). Walters testified that he declined to help, and declined to help on a later occasion when Edmonson asked for help a second time and stated that the kidnapping "was going to happen soon." (*Id*., Page ID # 1266–67).

Peace, Edmonson's former methamphetamine customer, testified that on August 10, 2018, Edmonson, Soper, and King asked him to drive them to Jellico, Tennessee. Peace agreed and drove them to Perkins' residence in Jellico. Perkins testified that Edmonson asked him to set up "a fake dope transaction" on Facebook with "S.C.," a twenty-year-old woman whom Edmonson claimed, "had ripped him off" and "stole dope from him." (Edmonson Sentencing Tr., R. 346,

Page ID # 1289–90, 1310). Edmonson denies any involvement with the Facebook message and asserts that Soper and Perkins independently messaged the victim. Perkins testified that she contacted the victim by sending a Facebook message about buying some "dope" in Newcomb, Tennessee, and Peace drove the group to the meeting. (*Id.*, Page ID # 1290–91). According to Perkins, Edmonson had a revolver and a pipe bomb in the car. The victim arrived at the agreed upon location, but instead was met by Edmonson, Soper, Perkins, Peace, and King, rather than the individual the victim intended to meet. Perkins testified that the victim attempted to flee the area, but Soper and Perkins, based on Edmonson's direction, exited the vehicle and physically forced the victim into their vehicle. The federal agent who investigated the matter, Todd Tremaine, interviewed the victim, and testified that the victim told him that Edmonson had pointed a gun at her at the time of her abduction. Edmonson denies brandishing a firearm to force the victim into the vehicle at the outset of the kidnapping and denies using a firearm at any other point during the incident. Perkins testified that Edmonson and Soper started "cussing at [the victim] about her not paying him for the dope," and Edmonson demanded to be paid. (Edmonson Sentencing Tr., ECF No. 346, Page ID #1292). Then, according to Peace's testimony, the victim's hands were tied together, and Edmonson told King to pass him a bag, Edmonson opened the bag, took out the pipe bomb, and told the victim: "If you don't do as I say, I'm going to blow us all up." (*Id.*, Page ID # 1251). Agent Tremaine testified that he later found the pipe bomb in Edmonson's residence and determined that the pipe bomb was a functioning destructive device. Edmonson objected to the assertion that he used a pipe bomb to threaten the victim while transporting her from Tennessee to Kentucky.

The group proceeded to transport the victim from Tennessee across the state line into Kentucky. Peace also picked up Gavin Dople, Perkin's boyfriend, along the way. While being

transported, the victim was blindfolded and bound to the floorboard of the vehicle. The victim was ultimately brought to a remote trailer at 50 Peggy Lane, where Soper and Edmonson were living. The victim was forced out of the vehicle and inside a bedroom of the trailer, where she was bound to a chair and blindfolded. Perkins testified that Soper hit the victim across her nose with a metal pipe, and Perkins punched the victim with her fists. After the assault, Perkins testified that Edmonson and Soper "poured Super Glue over [the victim's] nose to make it stop bleeding." (Edmonson Sentencing Tr., R. 346, Page ID #1298–99). Peace and Perkins described Edmonson as the leader of the kidnapping, Peace describing Edmonson as the one "calling the shots." (*Id.*, Page ID # 1255, 1303). Soper, testifying on behalf of Edmonson at his sentencing hearing, denied that Edmonson led and orchestrated the kidnapping. (*Id.*, Page ID # 1381).

In response to the victim's alleged methamphetamine debt owed to Edmonson, Perkins testified that the victim was forced to reach out to multiple individuals to request money or methamphetamine in exchange for the victim's release; the Presentence Report ("PSR") identifies the two such individuals. Edmonson asserts he did not request a large quantity of methamphetamine or money in exchange for the victim's release. Soper, testifying on behalf of Edmonson at his sentencing hearing, also denied any plan to seek ransom. However, "codefendants Bryanna Soper and Dallas Perkins acknowledged by way of their plea agreements that they and others requested the victim produce a large quantity of methamphetamine or approximately $10,000 and that the victim was made to reach out to numerous others requesting the money or methamphetamine in exchange for her release." (Edmonson PSR, Sealed, R. 310, Page ID # 1000).

Agent Tremaine testified that during the course of the kidnapping the participants used butane torches to burn the victim as they "were doing methamphetamine off of her flesh."

(Edmonson Sentencing Tr., R. 346, Page ID # 1359). During the investigation, Agent Tremaine found butane torches throughout Edmonson's trailer. According to Perkins' testimony, the victim was gagged with a sock in her mouth. While still bound to a chair, with the chair positioned so that the victim's head was on the floor, Perkins testified that Edmonson instructed Soper to insert a PVC pipe into the victim's vagina. Soper then threaded barbwire through the pipe and inserted it into the victim's body while Perkins and Edmonson watched. Agent Tremaine testified that the victim stated that when Soper was inserting the PVC pipe and barbwire into her, she heard Edmonson laughing and telling Soper to "push it in her more." (Edmonson Sentencing Tr., R. 346, Page ID #1360–61). Edmonson denies the assertion that he instructed Soper to continue assaulting the victim, denies participating in the sexual exploitation, and denies being present when the alleged sexual assault occurred. Edmonson also denies being in possession of a butane torch, a hard plastic pipe, a PVC pipe, or rusty barbwire during the kidnapping. Soper testified that only she and Perkins assaulted the victim and that Edmonson was not present in the trailer during that time. Further, Soper testified that Perkins told him over the phone about the sexual assault, and Edmonson responded: "I didn't know you were going to do that to her." (*Id.*, Page ID # 1380). However, the district court found that Soper's testimony minimizing Edmonson's involvement in the assault was not credible. Soper admitted that she had written on Facebook that Edmonson had "a very special place" in her "heart," that she "would not let any wrong come of him," and that she "would always protect him and 'will always have his back and walk by his side.'" (*Id.*, Page ID # 1383). Soper further testified that she was "high" during the kidnapping, and thus her recollection of where Edmonson was during the sexual assault was not precise. (*Id.*, Page ID # 1389).

Perkins testified that after the sexual assault, Edmonson and Soper left the residence with Peace, leaving King, Perkins and Dople behind with the victim. According to Perkins, before

leaving, Edmonson left a firearm with King and advised King not to let anyone leave the trailer. Edmonson denies leaving King with a firearm and directing him to not let anyone leave the residence. According to Perkins, King began playing "Russian roulette" with the revolver and fatally shot himself in the head, which led Perkins and Dople to leave the residence in panic. (Edmonson Sentencing Tr., ECF No. 346, Page ID #1306–07). The victim exited the residence and joined Perkins and Dople outside. Perkins, Dople, and the victim hid in a field while Perkins contacted her brother, Dakota Lovins, for a ride. Lovins then picked the group up and transported them to a residence in Tennessee, where the victim showered and eventually was taken home. At some point while the victim was being transported back to Tennessee, Perkins testified that Edmonson contacted Perkins by phone and asked that Perkins come back to the trailer to help him clean.

One week after the kidnapping, Hood testified that Edmonson told him "that he had to 'give a motherfucker what they deserve' and that he had had to Super Glue somebody's nose to stop it from bleeding." (*Id.*,Page ID # 1283). Moreover, Lovins testified that two to three weeks after the incident, Soper and Edmonson visited Lovins' grandparents' home. (*Id.*, Page ID # 1330). Soper recounted the events of the kidnapping, and Edmonson said, "[t]hat's what happens to people who don't pay their debts." (*Id.*,Page ID # 1330). Edmonson denies making these comments. Nathan Blankenship, the victim's friend, testified that for several months after the kidnapping, he saw Edmonson stalk the victim at stores, gas stations, and Blankenship's residence. Eventually, Blankenship delivered a half ounce of methamphetamine to Edmonson so that he would leave the victim alone. As a result of the offense, the victim sustained significant injuries, including: burns, abrasions, lacerations to her body, blunt force injuries, painful vaginal injuries, and permanent scarring to her thighs, calves, and face.

**Procedural History**

In September of 2019, Edmonson, Perkins, Soper, and Peace were each charged with one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Soper pleaded guilty on May 22, 2020, pursuant to a written plea agreement and Edmonson pled guilty without any formal agreement on September 23, 2021. The PSRs for Edmonson and Soper recommended a Sentencing Guidelines range up to life. The district court varied below the life recommendations and sentenced Edmonson to 516 months' imprisonment and Soper to 396 months' imprisonment. Peace and Perkins also pleaded guilty, receiving 110 months and 252 months of imprisonment, respectively, but did not appeal their sentences. Edmonson and Soper timely appealed their respective sentences. At sentencing, the district court overruled Edmonson's objections to Guidelines enhancements for use of a dangerous weapon, sexual exploitation, a leadership role, and a ransom demand. Soper appeals her sentence based on substantive reasonableness; Edmonson appeals the district court's decision to overrule his objections.

**II. DISCUSSION**

**1. Bryanna Soper's Sentence**

Soper's appeal is solely based on the substantive reasonableness of her sentence. Soper argues that the district court abused its discretion in failing to properly consider her personal background when weighing the § 3553(a) factors. However, we find that the district court did not abuse its discretion in determining Soper's sentence.

Criminal sentences are reviewed for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court substantively errs "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable

amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007))); *see United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). Under the abuse of discretion standard, a defendant's argument must go beyond "asserti[ng] that the district court should have balanced the § 3553(a) factors differently." *Sexton*, 512 F.3d at 332. The Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005) (citations omitted). With that in mind, this Court presumes that within-Guidelines sentences are reasonable. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008). Because sentencing is "a matter of reasoned discretion, not math," this Court's review of sentencing decisions is "highly deferential." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51).

Soper's PSR calculated a basic offense level of 32 under § 2A4.1 of the Guidelines. The PSR recommended a six-level enhancement for a ransom demand pursuant to U.S.S.G. § 2A4.1(b)(1) and a two-level enhancement for use of a firearm or deadly weapon pursuant to U.S.S.G. § 2A4.1(b)(3). Additionally, the PSR recommended a four-level increase for permanent or life-threatening bodily injury pursuant to U.S.S.G. § 2A4.1(b)(2)(A), and another six-level increase for the victim being sexually exploited pursuant to U.S.S.G. § 2A4.1(b)(5). After reducing the total by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), the PSR recommended a total offense level of 43.[2] Soper had four prior convictions that added four criminal history points, which equated to a criminal history category III. The PSR recommended a resulting advisory Guidelines range of life pursuant to 18 U.S.C. § 1201(a).

---

[2] Mathematically, the total would be 47, but where the total offense level is in excess of 43, the offense level is reduced to 43. U.S.S.G. ch. 5, pt. A, comment 2 ("In rare cases, a total offense level of . . . more than 43 may result from application of the guidelines. . . . An offense level of more than 43 is to be treated as an offense level of 43.").

At the sentencing hearing, defense counsel objected to the four-level increase for permanent or life-threatening bodily injury, arguing for the lesser "sustained bodily injury" enhancement of two levels; the district court agreed and reduced the four-level injury enhancement to two levels. (Soper Sentencing Transcript, R. 351, Page ID # 1585, 1590). Defense counsel provided no other objection at the sentencing hearing.[3] The district court calculated Soper's total offense level to be 48, including in its calculation the enhancements for ransom, use of a deadly weapon, sexual exploitations, and sustained bodily injury. Because the Guidelines limit an offense level to 43, the district court began its calculation at an offense level of 43.[4] The district court assigned a criminal history level of III, based on the PSR, with no objection from the parties. Based on a criminal history level of III and offense level of 43 the guideline range is life in prison. Defense counsel requested a downward variance of "240 months, 20 years in prison, with five years of supervised release to follow." (Soper Sentencing Transcript, R. 351, Page ID # 1611).

The district court carefully considered the § 3553(a) factors and imposed a sentence of 396 months with five years of supervised release. The court noted several points of mitigation, including Soper's young age (she was "24 at the time of the crime"), an absence of a significant criminal record ("really only had a DUI"), her "terrible" childhood (rampant with sexual, physical, and emotional trauma), her mental conditions (borderline personality, post-traumatic stress, and substance abuse disorders), her vulnerability to commit the crime based upon her methamphetamine use and the influence of others, and her acceptance of responsibility. (*Id.*, Page

---

[3] Defense counsel provided a written objection to the PSR, objecting to the six-level enhancement for a ransom demand, asserting that Soper's objective for the kidnapping was to punish the victim for nonpayment of a drug debt and not for the purpose of a ransom. However, at the sentencing hearing, defense counsel withdrew this objection and does not appeal the district court's determination in applying the six-level enhancement for a ransom demand.

[4] The district court did not apply the three-level reduction for acceptance of responsibility recommended in the PSR; however, there is no objection to this by either party.

ID # 1620, 1622–23, 1626–31). The court weighed Soper's personal circumstances against her participation in "extremely egregious conduct" and noted that her contribution to the crime evidenced a "complete detachment from society['s] rules and expectations." (Soper Sentencing Transcript, R. 351, Page ID # 1618, 1619–1620). The Court then determined that the sentence it imposed properly accounted for her conduct. Defense counsel does not dispute the offense details articulated by the court and Soper's role in the kidnapping.

However, Soper claims that the sentencing created an unwarranted disparity given her higher sentence in comparison to two of her codefendants and the national average for kidnapping. Both arguments are unavailing. The need to avoid sentencing disparities under § 3553(a)(6) "requires only a national comparison, not a comparison of codefendants in the same case." *United States v. Walls*, 546 F.3d 728, 737 n.3 (6th Cir. 2008) (citing *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008)). Furthermore, although the national average sentence for federal kidnapping convictions is 168 months, almost twenty years less than Soper's sentence, there is sufficient evidence to show that this case goes beyond an average federal kidnapping conviction, and the sentence imposed is not an unwarranted sentencing disparity.

The district court thoroughly analyzed and appropriately weighed the factors under § 3553(a) in concluding that Soper merited a sentence of 396 months. Because the district court imposed a substantively reasonable sentence, we affirm.

### 2. Douglas Edmonson's Sentence

Edmonson argues that the enhancements applied to his sentence by the district court were unsupported by the facts and circumstances of this case. We disagree.

"Sentences must be both procedurally and substantively reasonable." *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015) (citations omitted). Edmonson does not challenge the

substantive reasonableness of his sentence, and only argues that the enhancements applied to his sentence were made in error. "Whether the district court properly applied a sentence enhancement under the Guidelines is [ ] a matter of procedural reasonableness." *Id.* at 781. "A sentence is procedurally unreasonable if the district court fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Mayberry*, 540 F.3d 506, 517–18 (6th Cir. 2008) (internal quotations omitted) (quoting *United States v. Jones*, 489 F.3d 243, 250–51 (6th Cir. 2007)). This Court reviews the district court's findings of facts under a clearly erroneous standard and "the application of a particular guideline provision" de novo. *United States v. Snelling*, 768 F.3d 509, 512 (6th Cir. 2014) (quoting *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir. 2004)). A factual finding is clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McGee,* 494 F.3d 551, 554 (6th Cir. 2007) (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2005)).

In this case, Edmonson objected to the following enhancements: (1) a two-level enhancement for use of a dangerous weapon pursuant to U.S.S.G. § 2A4.1(b)(3); (2) a six-level enhancement for sexual exploitation pursuant to U.S.S.G. § 2A4.1(b)(5); (3) a four-level enhancement for a leadership role under U.S.S.G. § 3B1.1(a); and (4) a six-level enhancement for ransom pursuant to U.S.S.G. § 2A4.1(b)(1). The district court overruled Edmonson's objection based on evidence presented at the sentencing hearing and found the four enhancements appropriate. An offense involving kidnapping has a base offense level of 32, pursuant to U.S.S.G. § 2A4.1(a). (*Id.*). The district court then added six points for ransom, two points for the use of a dangerous weapon, six points for sexual exploitation, and four points for the role adjustment,

resulting in an offense level of 52. (*Id.*). After reducing the total by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), the total offense level was 43.[5] Edmonson's criminal history category was I, the lowest level, the resulting advisory Guidelines range resulted in a life sentence pursuant to 18 U.S.C. § 1201(a). The court varied downward, sentencing Edmonson to 516 months imprisonment, and explained that its sentence was based on Edmonson's recruitment and planning of the kidnapping, and his actions during and after the crime. The court also explained that Edmonson's lack of criminal history, his good work record, and his acceptance of responsibility were all mitigating factors that it considered in Edmonson's sentence. We will address each enhancement in turn.

1. *Two-Level Enhancement for a Dangerous Weapon Pursuant to U.S.S.G. § 2A4.1(b)(3)*

Section 2A4.1(b)(3) of the United States Sentencing Guidelines specifies that a two-level enhancement should apply if "a dangerous weapon [is] used" during the crime. The application notes further provide that "used" means that the firearm was discharged or "otherwise used." *See* U.S.S.G. § 2A4.1, Commentary, Application Note 2. "Otherwise used" is defined in § 1B1.1 of the United States Sentencing Guidelines as "conduct [that does] not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, Commentary, Application Note 1(J). The district court ultimately relied upon the use of the pipe bomb, barbwire, PVC pipe, and a butane torch to support the two-level enhancement. We agree that the two-level enhancement applies.

"[I]n the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete

---

[5] Mathematically, the total would be 49, but where the total offense level is in excess of 43, the offense level is reduced to 43. U.S.S.G. ch. 5, pt. A, comment 2.

curbs, clothes irons, and stink bombs." *United States v. Milliron*, 984 F.3d 1188, 1196 (6th Cir. 2021) (quoting *United States v. Callahan*, 801 F.3d 606, 628 (6th Cir. 2015)). When determining whether to apply a Guidelines enhancement to a defendant, courts consider "all acts" that the defendant "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" and, "in the case of a jointly undertaken criminal activity," the acts of others. *United States v. Iossifov*, 45 F.4th 899, 924 (6th Cir. 2022) (quoting "relevant conduct" provisions of § 1B1.3(a)(1)).

Edmonson argues that because the pipe bomb was not used, it cannot be considered for the purposes of § 2A4.1(b)(3), relying on Eleventh and Third Circuit authority. However, both cases support the conclusion that a pipe bomb need not be detonated and that the threat of detonation suffices for application of this enhancement. *See United States v. Miller*, 206 F.3d 1051, 1054 (11th Cir. 2000); *United States v. Wilson*, 369 F.3d 329, 337 (3d Cir. 2004). The question then turns to whether the district court erred by determining that Edmonson threatened to detonate the pipe bomb to intimidate the victim.

According to Peace's testimony, when the victim was in the car immediately after her abduction, Edmonson opened a bag, took out a pipe bomb, and told the victim: "If you don't do as I say, I'm going to blow us all up." (Edmonson Sentencing Tr., R. 346, Page ID # 1250–51). However, Edmonson argues that Peace's impeachment should call his credibility into question. Peace was impeached based on his statement to law enforcement agents in 2019 that he did not see any bombs in the car that day. The district court acknowledged the impeachment but determined that Peace's sworn testimony was credible. Peace's testimony was also bolstered by Perkins' testimony stating that there was a pipe bomb in the car when the victim was abducted, and Agent Tremaine's discovery of the pipe bomb in Edmonson's bedroom. Because we are not

left with the "definite and firm conviction that a mistake has been committed," we defer to the district court's credibility determination. *See McGee*, 494 F.3d at 554 (quoting *Tran*, 447 F.3d at 943). The district court did not clearly err in concluding that Edmonson's use of the pipe bomb justified the U.S.S.G. § 2A4.1 enhancement. And because the pipe bomb justified this enhancement, we need not consider the remaining weapons: the PVC pipe, barbwire, and butane torches.

### 2. Six-Level Enhancement for Sexual Exploitation Pursuant to Section to U.S.S.G. § 2A4.1(b)(5)

Section 2A4.1(b)(5) of the United States Sentencing Guidelines specifies that a six-level enhancement should be applied if a kidnapping victim was sexually exploited. Edmonson does not dispute the fact that the United States can prove the victim was sexually assaulted during the kidnapping. Rather, he denies that he was involved in the assault. We find Edmonson's arguments unavailing.

The district court applied the enhancement on two grounds: (1) Edmonson was present and directly involved in the assault, "procuring, commanding, aiding and abetting the specifics of the sexual assault;" and (2) engaged in "concerted activity under 1B1.3" of the Guidelines. (Edmonson Sentencing Tr., R. 346, Page ID # 1408 –1410). In arguing that the district court erred in applying the enhancement, Edmonson relies on Soper's testimony, and asserts that Perkins' testimony is unreliable. Soper testified that only she and Perkins assaulted the victim, and that Edmonson was not present in the trailer during that time. However, Perkins testified that Edmonson directed Soper to sexually assault the victim. Perkins' testimony is corroborated by Agent Tremaine's testimony on behalf of the victim. Edmonson questions Perkins' credibility because Perkins failed to tell federal agents that Edmonson was with her and Soper when the victim was being sexually assaulted, claiming that because she was high and scared she neglected to

include those facts in her statement to the federal agent. (*Id.*, Page ID # 1317–18). The district court found Perkins' and Agent Tremaine's testimonies more credible than Soper's countervailing version of the facts. Soper admitted that she had written on Facebook that Edmonson had "a very special place" in her "heart," that she "would not let any wrong come of him," and that she "would always protect him and 'will always have his back and walk by his side.'" (*Id.*, Page ID # 1383). "We afford the district court particular deference when its factual findings are based on credibility determinations." *Satterlee v. Wolfenbarger*, 453 F.3d 362, 367 (6th Cir. 2006). In this case, the district court did not clearly err in making these credibility determinations.

The district court also examined this enhancement in light of § 1B1.3. "[I]n order to hold a defendant accountable for the acts of others [under § 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *United States v. Campbell*, 279 F.3d 392, 399–401 (6th Cir. 2002) (quoting *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995)); *accord, e.g.*, *United States v. Merriweather*, 728 F. App'x 498, 520–22 (6th Cir. 2018). This Court generally looks at six factors to determine the scope of the jointly undertaken criminal activity: "(1) the existence of a single scheme; (2) similarities in modus operandi; (3) coordination of activities among schemers; (4) pooling of resources or profits; (5) knowledge of the scope of the scheme; and (6) length and degree of the defendant's participation in the scheme." *United States v. Donadeo*, 910 F.3d 886, 895 (6th Cir. 2018) (quoting *United States v. Salem*, 657 F.3d 560, 564 (7th Cir. 2011)).

In this case, the district court found that the scope of the jointly undertaken criminal activity was kidnapping by force for the purpose of assault and that the sexual assault was a foreseeable outcome. The court found that sexual assault was reasonably foreseeable because it was likely

that the "margins" and "boundaries" of the assaultive conduct could "get out of hand." (Edmonson Sentencing Tr., R. 346, Page ID # 1409). Every co-defendant except Soper described Edmonson as "in charge, calling the shots, and directing each step along the way." (*Id.*, Page ID # 1407). The motive behind the kidnapping was Edmonson's desire to obtain payment of a drug debt, and he recruited several individuals to take part in the kidnapping. Additionally, each Defendant participated in the heavy use of methamphetamine, and there were several dangerous weapons available for use. Based on these facts, it was foreseeable for the kidnapping to result in sexual and physical assault. The district court reasonably determined that the sexual assault was within the scope of Edmonson's conspiratorial agreement and was foreseeable by him.

Because this Court is not "left with the definite and firm conviction that a mistake has been committed" in determining that the enhancement for sexual assault pursuant to U.S.S.G. § 2A4.1(b)(5) applies to Edmonson's sentence, we affirm the district court's judgment. *See McGee*, 494 F.3d at 554 (quoting *Tran*, 447 F.3d at 943).

### 3. Four-Level Enhancement for a Leadership Role Pursuant to U.S.S.G. § 3B1.1

Section 3B of the United States Sentencing Guidelines applies enhancements or reductions depending on the defendant's role in the offense. A four-level Guidelines enhancement for an aggravating role in the offense applies if the defendant was "an organizer or leader of a criminal activity that involved five or more participants[,]" *United States v. Hills*, 27 F. 4th 1155, 1199 (6th Cir. 2022) (quoting U.S.S.G. § 3B1.1(a)), and the defendant is included in the five, *see, e.g.*, *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Hills*, 27 F. 4th at 1199 (quoting § 3B1.1 cmt. n.1). The enhancement applies if the defendant "exercised decisionmaking authority, recruited accomplices, received a larger share of the profits, was

instrumental in the planning phase of the criminal venture, or exercised control or authority over at least one accomplice." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009).

The district court found that the crime involved five participants—the four convicted defendants and King. Edmonson argues that King should not be counted as a participant in the kidnapping. Although disputed by Edmonson, the district court found that when Edmonson "asked for the pipe bomb, it was King who handed it to him" and during the commission of the kidnapping, Edmonson "[l]eft his gun with King with directions not to let anybody leave." (Edmonson Sentencing Tr., R. 346, Page ID # 1414–15). There is no dispute that King helped transport the victim across state lines, and that he had the gun in the trailer where the victim was held. Thus, the district court did not err in concluding that King was part of the orchestrated effort. There were five active participants in the crime, including King.

The district court also found that Edmonson organized and led the criminal activity. The district court opined that "[t]he proof [it] heard, and f[ound] credible, is that the defendant was . . . directly dictating the events and defining what would happen, when, and by whom." (*Id.*, Page ID # 1415). We find no error in this conclusion. In this case, Edmonson unsuccessfully tried to recruit two people (Hood and Walters) in planning the kidnapping, and later found others who agreed to participate. Edmonson denies that he tried to recruit others, but provides no reason as to why Hood's and Walter's testimonies describing the recruitment are not credible. Furthermore, Peace and Perkins described Edmonson as the leader of the kidnapping in their testimonies, and that the purpose behind the kidnapping was to obtain payment of the drug debt owed to Edmonson. Edmonson's recruitment efforts, motive to obtain his drug debt from the victim, and role in directing individuals to act throughout the kidnapping, is sufficiently established on this record. The court did not clearly err by applying the § 3B1.1 role enhancement to Edmonson's sentence.

> ### 4. *Six-Level Enhancement for Kidnapping for the Purpose of Ransom Pursuant to U.S.S.G § 2A4.1*

Section 2A4.1 of the United States Sentencing Guidelines permits a six-level enhancement if a ransom demand was made during the kidnapping. The PSR recommended, and the court adopted, a six-level ransom enhancement pursuant to § 2A4.1(b)(1). The district court concluded that the enhancement was appropriate because Edmonson demanded money or drugs from the victim and "forced the victim to reach out to others requesting money or methamphetamine in exchange for the victim's release." (Edmonson PSR, Sealed, R. 310, Page ID # 987). Edmonson argues that his conduct does not amount to ransom because his demands were directed only to the victim and "no demand was ever made by defendant to a third party." (Pet'r's Br., ECF No. 17, 9–10). However, the Sixth Circuit has not extensively considered the implications and application of this enhancement and need not do so here as any determination on this enhancement would make no difference to Edmonson's sentence. An error that does not affect the "ultimate" recommended Guidelines sentence is harmless. *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019). Edmonson had a total offense level of 49, but when the total level exceeds 43, the offense level is treated as a level 43. U.S.S.G. ch. 5, pt. A, comment 2. Because this Court upholds the other challenged enhancements, the sentence results in the same offense level of 43 and the same recommended life sentence, regardless of whether the six-level ransom increase is applied. Therefore, even if an error was made by the district court as to this ransom enhancement, it would be harmless.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment as to both Defendants.